

**NUMBER 13-08-00625-CR**

# COURT OF APPEALS

# THIRTEEN DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

| | |
|---|---|
| **KENDRICK WEST,** | **Appellant,** |
| **v.** | |
| **THE STATE OF TEXAS,** | **Appellee.** |

### On appeal from the 130th District Court
### of Matagorda County, Texas.

# MEMORANDUM OPINION

### Before Justices Rodriguez, Garza, and Benavides
### Memorandum Opinion by Justice Rodriguez

Appellant Kendrick West challenges his conviction, after a jury trial, for assaulting

a public servant, a third-degree felony, which was enhanced to a second-degree felony by

a prior felony conviction for robbery.  *See* TEX. PENAL CODE ANN. §§ 12(a)(3), 22.01(a)(1),

(b)(1) (Vernon Supp. 2009). By one issue, West argues that the evidence was legally and factually insufficient to support his conviction. We affirm.

## I. BACKGROUND

On March 27, 2007, West was indicted for assault on a public servant in connection with an incident involving a state trooper's attempt to arrest him on an outstanding warrant. The indictment read as follows:

> [O]n or about the 3rd day of October, 2006, . . . [West] did then and there intentionally, knowingly, and recklessly cause bodily injury to John Kopacz by striking him with both hands and arms, and [West] did then and there know that said John Kopacz was then and there a public servant, to-wit: State Trooper with the Texas Department of Public Safety, and that the said John Kopacz was then and there lawfully discharging an official duty, to wit: serving valid arrest warrant from Brazoria County.

*See id.* § 22.01(a)(1), (b)(1). The indictment also contained an enhancement count based on West's prior felony conviction for robbery, which raised the degree of the offense from a third-degree felony to a second-degree felony. *See id.* § 12(a)(3). West pleaded not guilty, and a jury trial of his case commenced on September 29, 2008.

### A. The State's Evidence

The State presented the testimony of three witnesses. First, Cindy George, a clerk at the Matagorda County office of the Texas Department of Public Safety (DPS) (the driver's license office), testified that West came to her office in early October 2006 to apply for a state identification card. She testified that a standard step in processing a state identification card application is to run the applicant's information through a law enforcement computer network that checks for outstanding arrest warrants. When George submitted West's application through that system, it signaled that there was an outstanding warrant for West's arrest. George testified that she called DPS dispatch, which informed

2

her that it would send a state trooper to arrest West. Trooper John Kopacz arrived at the driver's license office five minutes later, and George identified West to Trooper Kopacz. George testified that when Trooper Kopacz asked West for his name, West gave a false name. George stated that West then "bolted" out the front door of the office and that Trooper Kopacz ran after him. George testified that, after some time, Trooper Kopacz returned to the office; she stated that Trooper Kopacz looked "shaken up," that he was rubbing his shoulder as if it were injured and had some scratches on his neck, and that it appeared as if he had been in a scuffle.

Next, the State presented the testimony of Debra Ingram, a customer who was waiting in line at the driver's license office. Ingram testified that, as they were running out of the driver's license office, both West and Trooper Kopacz bumped into her and knocked her over. Ingram testified that Trooper Kopacz did not have a hold on West as the two men reached the front door of the office, but that she did not see anything once the two exited the front door. Ingram further stated that when Trooper Kopacz came back into the office, he appeared to be hot and sweaty.

Finally, the State called Trooper Kopacz to the stand. Trooper Kopacz testified that on the day in question, he received a call from dispatch that a person with an outstanding warrant was attempting to apply for a state identification card at the driver's license office. In response, Trooper Kopacz immediately went to the driver's license office. When he arrived, Trooper Kopacz entered the office through the back door. Trooper Kopacz testified that when he approached West and asked him to identify himself, West gave a false name. Trooper Kopacz further testified that while he was talking to West, West was

3

scanning the room and appeared to be looking for an exit. West then ran for the front door, and Trooper Kopacz testified that he gave chase.

Trooper Kopacz stated that he grabbed onto the back waistband of West's athletic shorts as West reached the front door. According to Trooper Kopacz, he was able to keep a grip on West's shorts as West then pulled him down the ramp outside the front entrance of the driver's license office. Trooper Kopacz testified that West was flailing his arms and hit Trooper Kopacz on his forearms, trying to force Trooper Kopacz to let go of his shorts. At the bottom of the ramp, West's shorts were pulled off and both men fell to the ground. Trooper Kopacz testified that he hit the ground hard, and West began kicking him in an effort to release himself from Trooper Kopacz's grip. Trooper Kopacz testified that he felt severe pain in both his shoulders and numbness in his hands due to the scuffle and fall.

Both men rose to their feet, West managed to pull on his shorts, and Trooper Kopacz continued to chase West around the parking lot of the DPS office and, at one point, had cornered West. Trooper Kopacz testified that when he realized his hands were numb and he would not be able to struggle with West any longer, he discontinued the foot chase, and West was able to escape. West was apprehended and arrested a few days later. Trooper Kopacz testified that, as a result of the fall, he sustained serious shoulder injuries that required multiple surgeries and prevented him from returning to active duty for over a year.

## B. The Defense's Evidence

West presented the testimony of two witnesses at trial. Gwynn Littleton and her son, Jake Leo, were both in the driver's license office when the incident occurred. Both

testified that they witnessed Trooper Kopacz approach West and saw both men running for the door. Both also testified that Trooper Kopacz did not have a hold on West's shorts when the men reached the front door. Littleton testified that she could not see the two men once they exited the front door of the driver's license office. Leo testified that, after West and Trooper Kopacz exited the front door, he went to look out the window of the office and saw

> Mr. West and the officer coming around the corner and Mr. West running around towards the back fence of the D.P.S. place and go around – all the way around that middle row of parking and the officer go halfway towards him and then turn his course to cut off Mr. West, but Mr. West went too fast and took a right onto the highway and ran and I couldn't see anymore.

Both Littleton and Leo testified that Trooper Kopacz did not look particularly disheveled when he came back into the office.

After hearing and considering the evidence, the jury convicted West of assault of a public servant. West pleaded "true" to the enhancement count, and the jury assessed punishment at twenty years' incarceration and a $10,000 fine. This appeal ensued.

## II. STANDARD OF REVIEW AND APPLICABLE LAW

In conducting a legal sufficiency review, an appellate court must view all the evidence in the light most favorable to the verdict and determine not "'whether *it* believes that the evidence at trial established guilt beyond a reasonable doubt,'" but rather, whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009) (quoting *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979)); *Escamilla v. State*, 143 S.W.3d 814, 817 (Tex. Crim. App. 2004). The trier of fact is the sole judge of the facts, the credibility

5

of the witnesses, and the weight given to testimony. *See* TEX. CODE CRIM. PROC. ANN. art. 38.04 (Vernon 1979); *Beckham v. State*, 29 S.W.3d 148, 151 (Tex. App.–Houston [14th Dist.] 2000, pet. ref'd). We do not reevaluate the weight and credibility of the evidence, and we do not substitute our own judgment for the trier of fact. *King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000) (en banc); *Beckham*, 29 S.W.3d at 151. Instead, we resolve any inconsistencies in the evidence in favor of the judgment and consider whether the jury reached a rational decision. *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000); *Beckham*, 29 S.W.3d at 151.

In a factual sufficiency review, we view all of the evidence in a neutral light to determine whether a jury was rationally justified in finding guilt beyond a reasonable doubt. *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006). Evidence may be factually insufficient if: (1) it is so weak as to be clearly wrong and manifestly unjust, or (2) the jury's verdict is against the great weight and preponderance of the available evidence. *Id.* Unless the record clearly reveals that a different result is appropriate, we must defer to the fact finder's determination concerning the weight to be given to contradictory testimony. *Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008). And unless we can say with some objective basis in the record that the great weight and preponderance of the evidence contradicts the jury's verdict, we will not reverse the judgment as factually insufficient. *Watson*, 204 S.W.3d at 417.

Both legal and factual sufficiency are measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997); *Adi v. State*, 94 S.W.3d 124, 131 (Tex. App.–Corpus Christi 2002, pet.

ref'd). Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Gollihar v. State*, 46 S.W.3d 243, 253 (Tex. Crim. App. 2001); *Malik*, 953 S.W.2d at 240. Under a hypothetically correct jury charge in this case, a person commits the offense of assault of a public servant if he "intentionally, knowingly, or recklessly causes bodily injury" to "a person the actor knows is a public servant while the public servant is lawfully discharging an official duty." *See* Tex. Penal Code Ann. § 22.01(a)(1), (b)(1). "Bodily injury" is defined as "physical pain, illness, or any impairment of physical condition." *See id.* § 1.07(a)(8) (Vernon Supp. 2009). "This definition is 'purposely broad and seems to encompass even relatively minor physical contacts so long as they constitute more than mere offensive touching.'" *Wead v. State*, 94 S.W.3d 131, 135 (Tex. App.–Corpus Christi 2003), *rev'd on other grounds*, 129 S.W.3d 126 (Tex. Crim. App. 2004) (quoting *Lane v. State*, 763 S.W.2d 785, 786 (Tex. Crim. App. 1989)).

## III. Discussion

By his sole issue on appeal, West argues that the evidence at trial was both legally and factually insufficient to support his conviction because the evidence did not show that he assaulted Trooper Kopacz with his hands and arms.[1] West also argues that the

---

[1]Citing *Zuniga v. State*, West argues that the evidence is factually insufficient because although the evidence of guilt may have "preponderate[d]" in favor of conviction, it was nonetheless insufficient to prove the relevant elements beyond a reasonable doubt. 144 S.W.3d 477, 484-85 (Tex. Crim. App. 2004), *overruled by Watson v. State*, 204 S.W.3d 404, 417 (Tex. Crim. App. 2006). However, the proposition West relies upon from *Zuniga* has not been valid Texas law for over three years, and we are therefore unpersuaded by his argument relying on that case. *See Watson*, 204 S.W.3d at 417.

evidence was insufficient to prove that the shoulder injuries suffered by Trooper Kopacz were the result of the alleged assaultive strikes by West.

At trial, Trooper Kopacz testified that, as he was being dragged down the ramp outside the driver's license office by West, West was flailing his arms and repeatedly hit Trooper Kopacz on his forearms. Trooper Kopacz testified that both men fell at the end of the ramp and that he hurt his shoulders during that fall. Trooper Kopacz also testified that his hands were numb after the fall. George testified that when Trooper Kopacz came back into the driver's license office, he appeared to have been in a scuffle; George testified that there were scratches on Trooper Kopacz's neck and that he was rubbing his shoulder as if it were injured. Ingram also testified that Trooper Kopacz was hot and sweaty when he returned to the office. The foregoing is all evidence from which a rational jury could conclude that West intentionally, knowingly, or recklessly caused bodily injury to Trooper Kopacz. *See* TEX. PENAL CODE ANN. § 22.01(a)(1), (b)(1); *Watson*, 204 S.W.3d at 414-15; *Beckham*, 29 S.W.3d at 151. Moreover, we note that even if Trooper Kopacz had not suffered the shoulder injuries discussed at trial, the blows to Trooper Kopacz's forearms and the scratches on his neck are at least "minor physical contacts" and are certainly more than "mere offensive touching." *See Wead*, 94 S.W.3d at 135.

West points to the testimony of Littleton and Leo and argues that their account of the events on the day in question are sufficient contrary evidence to negate a finding beyond a reasonable doubt that West assaulted Trooper Kopacz. Both Littleton and Leo testified, contrary to Trooper Kopacz's testimony, that Trooper Kopacz did not have a hold on West's shorts when they reached the front door of the driver's license office. However,

8

Littleton stated that she could not see what happened after Trooper Kopacz and West exited the front door. And although Leo stated that he never saw a struggle between Trooper Kopacz and West as he was watching the chase from the window of the driver's license office, it is unclear from his testimony whether he saw the part of the chase that occurred on and near the ramp outside the office. Regardless, the jury is to resolve inconsistencies in the testimony, and the jury here was within its rights to believe Trooper Kopacz's account of the events on that day and disbelieve Littleton and Leo's. *See Lancon*, 253 S.W.3d at 705; *King*, 29 S.W.3d at 562.

In sum, we conclude the evidence was both legally and factually sufficient to support West's conviction. Viewing the evidence in the light most favorable to the conviction, a rational jury could have found the essential elements of the crime beyond a reasonable doubt. *See Laster*, 275 S.W.3d at 517. Neither was the evidence so weak as to render the verdict clearly wrong or manifestly unjust nor was the jury's verdict against the great weight and preponderance of the available evidence. *See Watson*, 204 S.W.3d at 414-15. Accordingly, West's sole issue is overruled.

## IV. CONCLUSION

The judgment of the trial court is affirmed.

NELDA V. RODRIGUEZ
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
25th day of March, 2010.