# DULUTH STREET RAILWAY COMPANY v. FIDELITY & DEPOSIT COMPANY OF MARYLAND.[1]

### March 9, 1917.

### Nos. 20,147—(269).

**Facts.**

1. Defendant insured plaintiff against direct loss by robbery by force and violence commonly known as highway robbery or holdup. Plaintiff's treasurer, with a large amount of money in an inside pocket of a coat buttoned up, encountered three thieves in an elevator. One crowded him against the others and thus distracted his attention while the other two filched his money without his realizing it at the time.

**Criminal law — robbery.**

2. This was robbery. Robbery implies the use of force or putting in fear, but if the thief jostles his victim for the purpose of diverting his attention, and, while his attention is so diverted, picks his pockets, the crime is robbery.

**Robbery by holdup — insurer liable.**

3. Highway robbery differs from robbery in general only in the place where it is committed. Robbery by holdup originally applies to the stopping and robbery of traveling parties, but the term has acquired a broader meaning. It has come to be applied to robbery in general, by the use of force or putting in fear. Plaintiff suffered a loss by robbery of the kind insured against and defendant is liable.

Action in the district court for St. Louis county to recover $1,600 upon defendant's policy of insurance. The answer alleged that the loss of money by plaintiff was not by means of robbery which was occasioned by felonious, violent and forcible means, commonly known as "holdup." The case was tried before Cant, J., who at the close of the testimony denied defendant's motion to dismiss the action on the ground that plaintiff failed to make out a cause of action under the complaint, and a jury which returned a verdict in favor of plaintiff for $1,664. From an order

[1]Reported in 161 N. W. 595.

denying its motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*Fryberger, Fulton & Spear,* for appellant.

*Thomas S. Wood* and *G. A. E. Finlayson,* for respondent.

HALLAM, J.

1. Plaintiff operates street railways in Duluth and Superior. Its moneys, received originally from fares of passengers, are conveyed by messengers and agents who make regular trips from place to place. Among others, Mr. Reichert, the treasurer and paymaster of the company, is in the habit of making regular semimonthly trips from the general offices of the company to the bank, where he obtains money for his payroll, thence to the office of the attorney of the company, thence back to the general office of the company. Defendant's business is writing surety bonds. Plaintiff applied to defendant for a policy covering risk of loss by robbery of its messengers and agents on these trips. Defendant wrote and delivered the policy on which this suit was brought. It is designated on its face "blanket holdup" policy, and is spoken of in correspondence by defendant as "interior holdup and robbery from messenger" insurance. It provided "for direct loss" of money "by robbery by force and violence, commonly known as highway robbery or holdup * * * from the person, care and custody of any employee * * * of the assured," and does not cover "loss of money * * * by robbery unless occasioned by felonious, violent and forcible means commonly known as holdup."

While this policy was in force, Mr. Reichert, on one pay day, went to the bank, received some $1,600 in currency, placed it in an envelope, put the envelope in the inside pocket of his undercoat, buttoned up his coat, went to the elevator and in it to the fifth floor of the building to the office of the company's attorney. Two men were in the elevator ahead of him. Another, Miller, followed him in. While in the elevator, as Reichert described the incident: "Miller backed up into me, crowding me back"—"forcing me against the two men behind me"—"the pressure continued from the time the elevator started until the elevator stopped on the fifth floor;" the pushing or crowding was such that "we were jammed together very compactly"—"making rather a compact bundle of humanity"—the pressure was "gentle but firm." When the

elevator arrived at the fifth floor, Miller obstructed his passage out so that the two men behind him passed out ahead of him. Miller's conduct was so pronounced that Reichert resented it and as they left the elevator turned to him and said: "You are some little crowder, fellow." While this crowding process was going on in the elevator, and aided by it, one or both of the men behind relieved Reichert of his roll of money.

2. The trial court charged the jury that, if the evidence disclosed a case of robbery, plaintiff could recover, and said that robbery is the taking of money from the person of another against his will by use of force or putting him in fear, that while some force other than that involved in stealthily picking a pocket was necessary to constitute robbery, if the excess of force was designedly used to confuse Reichert or to distract his attention from the acts of the men who actually took the money and facilitated the stealing of it, the use of such force would be sufficient to constitute robbery within the meaning of the policy. The jury found for plaintiff.

The main complaint on this appeal is as to the court's definition of the robbery which the policy covers. We think the court was right.

The policy covers robbery commonly known as highway robbery or holdup. The law recognizes different degrees of theft. It is right that it should do so, because the purloining of money under some circumstances is a graver moral crime than under others. Burglary, robbery and larceny are not all the same in kind or in moral delinquency. To take money violently from the person of another or from his dwelling at night is a graver offense than to misappropriate his money which has been found. The fields of activity of these various professions merge into one another, but distinctions do exist.

For purposes of this case the trial court's definition of robbery was right. Robbery implies force or the putting in fear. If force is used it must be to obtain or retain possession of the money taken or to prevent or overcome resistance to the taking. The degree of force used is immaterial. "Taking from the person of another constitutes robbery whenever it appears that, although the taking was fully completed without his knowledge, such knowledge was prevented by the use of force." These definitions are found in our statutes and they are generally recognized. G. S. 1913, § 8635; United States v. Jones, Fed. Cas. No. 15,-

494, 3 Wash. C. C. 209 ; Snyder v. Commonwealth, 55 S. W. 679, 21 Ky. Law, 1538. If the thief jostles the victim about for the purpose of diverting his attention, and then, while his attention is so diverted, picks his pocket, the crime is robbery. Seymour v. State, 15 Ind. 288; Snyder v. Commonwealth, supra; Commonwealth v. Snelling, 4 Binn. (Pa.) 379; Mahoney v. People, 3 Hun, 202; 34 Cyc. 1799-1800. Such conduct constitutes an assault and the use of force. Mailand v. Mailand, 83 Minn. 453, 455, 86 N. W. 445.

3. There can be no doubt that the act of these three men was robbery. But defendant's counsel claims it was not highway robbery nor holdup. Neither "highway robbery" nor robbery by "holdup" is recognized in our statutes as a distinct crime. Both are forms of robbery. Defendant claims this is not a case of highway robbery. Perhaps it is not. But if it is not, then it is only because of the place where the robbery was committed. Highway robbery is but robbery committed on or near a highway or other public place. State v. Brown, 113 N. C. 645, 18 S. E. 51; 4 Blackstone, Comm. 243; 3 Cent. Dict. p. 2830, "Highwayman." In quality it differs not from any other kind of robbery.

Defendant's counsel contends that this is not a case of holdup. The term holdup he contends signifies "a crime of open violence character- ized by desperate criminal force," in other words, it means only desper- ately violent robbery. We cannot adopt this definition. The term originated, as have some other expressive words, in American slang. Webster defines it as "an assault * * * for the purpose of robbery,— originally on traveling parties in the western United States." Webster, New Int. Dict. (ed. 1910) p. 1025. Strictly speaking, it signifies the assault rather than the robbery. It is elsewhere defined, "to stop for the purpose of robbing." Standard Dict. 1913, p. 1169. The term doubtless arose from the accompanying demand to hold up hands (Stand- ard Dict. supra) just as the word "stickup," a term orginating among the bush rangers of Australia, arose from detention accompanied by the appropriate "sticking" of a gun. See Webster, p. 2044. This latter word has come to have a broader colloquial meaning and now means "to rob, as a highwayman." See Webster, New Int. Dict. (1910) p. 2044; Stand- ard Dict. (1913) 2380. We think the term "holdup" has acquired the same general meaning. The element of place or environment is gone from

it. Robbery by holdup is used to signify any form of robbery by the use of force. We are not disposed to give to the word "holdup" any narrower meaning. We cannot classify robbery by holdup as a specialized form of robbery to be ascertained by measuring the amount of force or violence used. The uses of the term have no doubt been somewhat vague. Yet, defendant prepared this policy. Words of doubtful meaning must be construed most strongly against it. Meanings not made clear will not be inferred to defeat liability. Bader v. New Amsterdam Casualty Co. 102 Minn. 186, 112 N. W. 1065, 120 Am. St. 613; George A. Hormel & Co. v. American Bonding Co. 112 Minn. 288, 128 N. W. 12, 33 L.R.A. (N.S.) 513. We think Mr. Reichert was the victim of a holdup as that term is now understood. We think that if three knaves set out to get a person's money from the inside pocket of a securely buttoned garment and one of them jostles him, crowds him, jams him and forces him against the other two, thereby accomplishing the double purpose of distracting his attention and preventing his recognizing the presence of a hand in his pocket, this is distinctly an assault. And if, while this process is going on, the two abstract his money from his pocket, the person has been held up and robbed, even though the knaves have succeeded in so confusing him that he does not realize at the time he is being robbed.

Our view of this case is not substantially different from that taken by defendant's superintendent when he declined to pay this loss. He claimed no special significance for the term "holdup." He said: "The legal definition of robbery as intended under our policy, is the taking with the intent to steal, of personal property in possession of another from his person or in his presence by violence, or by putting him in fear." Liability was denied because of a statement made by Mr. Reichert that the loss was the result of pocket picking. Mr. Reichert did so state in a written statement made soon after the loss. He also stated, however, all the facts which we have here mentioned. Plaintiff should not lose because Reichert did not understand the legal bearing of these facts.

We think the plaintiff suffered a loss by robbery by force commonly known as holdup and that defendant is liable.

Order affirmed.