In the

# United States Court of Appeals

## For the Seventh Circuit

No. 16-2861

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

RANDALL JENNINGS,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Western District of Wisconsin.
No. 15-CR-138 — **James D. Peterson**, *Chief Judge.*

ARGUED APRIL 4, 2017 — DECIDED JUNE 16, 2017

Before WOOD, *Chief Judge*, and KANNE and ROVNER, *Circuit Judges.*

ROVNER, *Circuit Judge*. Defendant Randall Jennings pleaded guilty to being a felon in possession of a firearm. *See* 18 U.S.C. § 922(g)(1). At sentencing, the district court found that Jennings' prior convictions in Minnesota for simple robbery and felony domestic assault constituted convictions for crimes of violence for purposes of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), and the parallel provi-

sion of the Sentencing Guidelines. Consequently, Jennings was subject to a 15-year statutory minimum prison term along with an enhanced Guidelines offense level and criminal history categorization. Jennings appeals, contending that neither simple robbery nor domestic assault, as Minnesota defines those crimes, qualify as a crime of violence. We affirm.

## I.

On August 22, 2015, an individual attempted to purchase prescription Klonopin pills from Jennings in Hudson, Wisconsin. The transaction went awry for the purchaser when Jennings put a gun to his head and Jennings' girlfriend proceeded to steal his money from his truck. After the victim reported the robbery, local police stopped Jennings' car. Nearby, police found a loaded semi-automatic Ruger handgun that Jennings' girlfriend had thrown from his vehicle shortly before he was pulled over. Jennings was arrested and indicted for possessing a firearm following a felony conviction, in violation of section 922(g)(1). He eventually pleaded guilty to that charge.

As relevant here, Jennings' criminal history included a prior conviction in Minnesota for simple robbery along with two additional convictions in that same state for felony domestic assault. The probation officer's pre-sentence report (both original and as amended) treated those convictions as crimes of violence for purposes of the armed career criminal provisions of the Criminal Code and the Sentencing Guidelines. *See* § 924(e); U.S.S.G. § 4B1.4. Jennings objected to the characterization of these offenses, contending that, as defined by Minnesota law, they do not categorically involve the use or threatened use of violent physical force and for that reason do not qualify as violent felonies. *See Curtis Johnson v. United States*, 559 U.S. 133, 140, 130 S. Ct. 1265, 1271 (2010). The district court, relying on our decisions in *United*

*States v. Maxwell*, 823 F.3d 1057 (7th Cir.), *cert. denied*, 137 S. Ct. 401 (2016) (Minnesota simple robbery), and *United States v. Yang*, 799 F.3d 750 (7th Cir. 2015) (Minnesota felony domestic violence), overruled Jennings' objections. After soliciting supplemental briefing, the court found that Jennings' two Minnesota convictions for making terroristic threats also constituted convictions for a violent crime—meaning that Jennings had a total of five such prior convictions. R. 31. Designation as an armed career criminal had a triple impact on Jennings' sentencing range: (1) pursuant to section 924(e), Jennings was subject to a statutory minimum term of 15 years; (2) coupled with Jennings' use of a weapon in robbing his prescription pill customer, it boosted his Guidelines base offense level to 34, *see* U.S.S.G. § 4B1.4(b)(3)(A); and (3) again in combination with his use of the gun to commit a robbery, it pushed him into the uppermost criminal history category of VI, *see* U.S.S.G. § 4B1.4(c)(2). After a 3-level reduction in the offense level for Jennings' acceptance of responsibility, *see* U.S.S.G. § 3E1.1(b), the Guidelines called for a sentence in the range of 188 to 235 months. The district court elected to impose a below-Guidelines sentence of 180 months, the lowest sentence that the ACCA permitted him to impose. Jennings appeals the treatment of his prior convictions as crimes of violence.

## II.

Whether any of Jennings' prior convictions qualify as crimes of violence, and in sufficient number to trigger the statutory and Guidelines enhancements for career offenders, present legal questions as to which our review is de novo. *E.g.*, *United States v. Meherg*, 714 F.3d 457, 458 (7th Cir. 2013).

Our focus shall be on Jennings' prior convictions for simple robbery and felony domestic violence. The district court relied in part on Jennings' prior convictions under the Minnesota terroristic threat statute, Minn. Stat. § 609.713, subd.

1, in concluding that Jennings is a career offender. But the court's rationale in that regard was premised on the notion that the Minnesota statute is divisible as to the type of crime the defendant threatens to commit in order to terrorize his victims, rendering it permissible, using a modified categorical approach, to examine the so-called *Shepard* documents (*e.g.*, the indictment, plea agreement, and plea colloquy) in order to determine whether the particular crime Jennings had threatened to commit involves the threatened, attempted, or actual use of physical force. R. 31 at 2–3; *see Shepard v. United States*, 544 U.S. 13, 26, 125 S. Ct. 1254, 1263 (2005). However, the government believes that the Supreme Court's decision in *Mathis v. United States*, 136 S. Ct. 2243, 2256 (2016) (if listed components of alternatively phrased criminal statute are means rather than elements, modified categorical approach not permitted),[1] forecloses the district court's premise as to the divisibility of the statute. As the government does not defend the career criminal determination on the basis of these convictions, we shall abstain from any analysis of them and turn to Jennings' convictions for robbery and domestic violence.

The ACCA, in relevant part, specifies that a person convicted of being a felon in possession of a firearm pursuant to section 922(g) shall be sentenced to a prison term of not less than 15 years if he has three prior convictions "for a violent felony or a serious drug offense, or both, committed on occasions different from one another." § 924(e)(1). The "violent felony" provision is the one that is relevant here. The statute defines "violent felony" to include any felony that "(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (ii) is burgla-

---

[1] *Mathis* was decided on the same day as the district court's decision as to the terroristic threat convictions.

ry, arson, or extortion, [or] involves use of explosives[.]" § 924(e)(2)(B). None of Jennings' prior offenses are among those identified in the enumerated crimes-clause of the statute, § 924(e)(2)(B)(ii), so only if they satisfy the force clause, § 924(e)(2)(B)(i) can they qualify as violent felonies.[2]

The armed career criminal guideline specifies an elevated offense level of 34 and a criminal history category of VI for a defendant who is subject to an enhanced statutory minimum sentence pursuant to section 924(e) and whose underlying offense involved the use or possession of a firearm in connection with (as relevant here) a crime of violence. U.S.S.G. § 4B1.4(b)(3)(A) and (c)(2). The guideline's definition of "crime of violence" includes a force clause that is identical to the force clause of section 924(e), *see* U.S.S.G. § 4B1.2(a)(1), cross-referenced by § 4B1.4(b)(3)(A), and consequently the analysis as to whether a particular conviction constitutes a crime of violence because it has as an element the use of force is the same whether we are applying the guideline or the ACCA. *See, e.g., United States v. Wyatt*, 672 F.3d 519, 521 (7th Cir. 2012).

Our assessment of the two state offenses at issue in this appeal entails a categorical inquiry. The facts underlying Jennings' prior convictions are irrelevant to our evaluation; our one and only consideration is whether each of the statutes pursuant to which Jennings was convicted has as an element the use, attempted use, or threatened use of physical

---

[2] The residual clause of section 924(e)(2)(B)(ii), which treats as a violent felony any offense that "otherwise involves conduct that presents a serious potential risk of physical injury to another," was declared unconstitutionally vague in *Samuel Johnson v. United States*, 135 S. Ct. 2551 (2015). Consequently, a felony offense must meet the criteria of either the force clause or the enumerated-crimes clause in order to qualify as a violent felony.

force against the person of another. *See Taylor v. United States*, 495 U.S. 575, 600–02, 110 S. Ct. 2143, 2159–60 (1990); *United States v. Maxwell*, *supra*, 823 F.3d at 1060–61.

*Curtis Johnson v. United States*, *supra*, 559 U.S. at 140, 130 S. Ct. at 1271,[3] defines "physical force" to mean "violent force," in other words, "force capable of causing physical pain or injury to another person." 559 U.S. at 140, 130 S. Ct. at 1271 (emphasis in original). The mere touching of another person, which is all the force that the prior state conviction at issue in *Curtis Johnson* required, is not sufficient to satisfy the ACCA. *Id.* at 139, 130 S. Ct. at 1270. *Curtis Johnson* thus requires us to consider whether the Minnesota statutes under which Jennings was convicted categorically require the use or threatened use of violent physical force as that case defines it.

## A.

We begin with the offense of simple robbery. Minn. Stat. § 609.24 provides that "[w]hoever, having knowledge of not being entitled thereto, takes personal property from the person or in the presence of another and uses or threatens the imminent use of force against any person to overcome the person's resistance or powers of resistance to, or to compel acquiescence in, the taking or carrying away of the property is guilty of robbery … ." Our decision in *Maxwell* recognized that under Minnesota law, fifth-degree assault is a lesser included offense of simple robbery. 823 F.3d at 1061 (citing *State v. Stanifer*, 382 N.W.2d 213, 220 (Minn. Ct. App. 1986)). The Minnesota criminal code defines fifth-degree assault as an act committed with "intent to cause fear in another of

---

[3] We are using the petitioner's full name in citing the case to distinguish it from *Samuel Johnson v. United States*, 135 S. Ct. 2551, *supra* n.2, which held the residual clause of the ACCA to be unconstitutional.

immediate bodily harm or death" or "intent[ ] [to] inflict[ ] or attempt[ ] to inflict bodily harm upon another." Minn. Stat. § 609.224, subd. 1; *see Maxwell*, 823 F.3d at 1061. "Bodily harm" is in turn defined as "physical pain or injury, illness, or any impairment of physical condition." Minn. Stat. § 609.02, subd. 7. In short, in order to commit simple robbery in Minnesota, one must intentionally inflict, or attempt to inflict, physical pain or injury upon another or must act in such a way as to place a person in fear of physical injury, pain, or death. For that reason, *Maxwell* rejected an argument that it might be possible to commit simple robbery in Minnesota by means of mental force, which (Maxwell believed) would not meet *Curtis Johnson*'s requirement that violent physical force be used before an offense can be labeled a crime of violence. 823 F.3d at 1061. *See also United States v. Raymond*, 778 F.3d 716, 717 (8th Cir. 2015) (per curiam); *United States v. Samuel Johnson*, 526 F. App'x 708, 711 (8th Cir. 2013) (non-precedential decision), *j. rev'd on other grounds*, 135 S. Ct. 2551 (2015).

Jennings urges us to overrule *Maxwell*, arguing that we overlooked a parallel line of Minnesota cases that, in contrast to *Stanifer*, appears not to require the use or threatened use of substantial physical force. He notes that in *State v. Burrell*, 506 N.W.2d 34 (Minn. Ct. App. 1993), the Minnesota Court of Appeals said that "[m]ere force suffices for the simple robbery statute," *id.* at 37, and Jennings equates "mere force" with de minimis force that would neither inflict pain or injury nor instill fear of pain or injury. By way of illustration, he highlights a series of cases in which Minnesota courts have expressly found relatively modest physical contact with or injury to a victim sufficient to satisfy the force element of robbery. *See State v. Slaughter*, 691 N.W.2d 70, 76 (Minn. 2005) (snatching chains from victim's neck, leaving scratches); *State v. Nelson*, 297 N.W.2d 285 (Minn. 1980) (per curiam)

(jostling and grabbing victim and pulling on his jacket); *Du-luth St. Ry. Co. v. Fidelity & Deposit Co. of Md.*, 161 N.W. 595 (Minn. 1917) ("gentle but firm" crowding of victim inside of elevator).

This line of argument has divided judges in the District of Minnesota. *Compare United States v. Pettis*, 2016 WL 5107035, at *3 (D. Minn. Sept. 19, 2016) (holding simple robbery not a crime of violence), *appeal filed*, No. 16-3988 (8th Cir. Oct. 20, 2016), *with United States v. Willis*, 2017 WL 1288362, at *3 & n.3 (D. Minn. April 6, 2017) (holding simple robbery does constitute crime of violence); *United States v. Taylor*, 2017 WL 506253, at *5–*7 (D. Minn. Feb. 7, 2017) (same), *appeal filed*, No. 17-1760 (8th Cir. April 10, 2017); *United States v. Pankey*, 2017 WL 1034581, at *3 n.2 (D. Minn. Mar. 16, 2017) (same). *See also Ward v. United States*, 2017 WL 2216394, at *5–*7 (D. Id. May 18, 2017) (deeming Minnesota simple robbery to be crime of violence). But we are not persuaded by Jennings' argument.

First, as the government rightly points out, *Burrell*'s use of the phrase "mere force" does not signal that de minimis force is sufficient to satisfy the force element of simple robbery. *Burrell* used that phrase to distinguish aggravated robbery, Minn. Stat. § 609.245, from simple robbery, § 609.24. The defendant in that case argued that the two statutes overlapped impermissibly and that, on the facts, either could control, such that his conviction should be reduced to the lesser of the two offenses. The court rejected that argument, reasoning that the statutes described distinct crimes. 506 N.W.2d at 37. Aggravated robbery, the court pointed out, requires that the victim suffer an injury by virtue of the defendant's use of force, whereas simple robbery is satisfied by the use or threat of force, without more. *Id.* That is what the court meant by "mere force." The defendant in *Burrell* did not contend that the particular degree of force he used in

carrying away a store owner's property (he threw the store owner against a car, bit her wrist, punched her in the face, and knocked her to the ground) was insufficient to sustain his convictions.

Second, neither of the two additional cases that Jennings and other defendants point to as confirmation that de minimis force is sufficient to sustain a conviction for simple robbery in Minnesota—*Nelson* or *Duluth St. Ry.*—really stands for that proposition at all.

In *Nelson*, the defendant and his accomplice, both adults, set out to rob a 13-year-old boy they saw alighting from a bus because he appeared to have "lots of money." Having resolved to "get[ ]" the boy, they proceeded to follow, "jostle[ ]" and "grab[ ]" him. As the defendant pulled on the victim's jacket, the boy managed to slip out of it and run to his family's nearby restaurant for help. The boy's father later came upon the two perpetrators going through the pockets of the jacket. In appealing his conviction for simple robbery, the defendant argued that the jury should have been instructed on the lesser included offenses of misdemeanor and felony theft, because his use of force was so minimal as to negate the notion that his victim had acquiesced to that force. The Minnesota Supreme Court wasted few words on this argument, agreeing with the trial court that "there was no rational basis for a finding that defendant's use of force did not cause the victim to acquiesce in the taking of the property." 297 N.W.2d at 286.

What is apparent from the facts of *Nelson* is that the defendant and his accomplice intended to employ substantial physical force in order to relieve a minor of his money; the defendant's act of pulling on the victim's jacket was but one manifestation of that intent. As it happened, that one tug on the jacket pre-terminated the encounter, because it gave the

young victim the opportunity to escape his assailants and seek help. It is a fair, and perhaps inevitable, inference that the boy ran from his assailants in fear for his safety, sacrificing his jacket (which the defendant admitted was *not* what he and his accomplice were after) in order to avoid pain and/or injury. As the district court in *Taylor* put it, "The force in *Nelson* was more than de minimis; two adults pursing a 13-year-old with the intention of 'getting him,' following him and grabbing him, constitutes force—and surely the threat of force—capable of causing physical pain, if not also injury." 2017 WL 506253, at *5.

*Duluth St. Ry.* is barely relevant, let alone instructive. The issue in that civil case was whether an insurance policy's coverage as to robbery included pickpocketing. Thieves had exerted "gentle but firm" pressure to "crowd" (i.e., closely surround) the insured on an elevator, and then surreptitiously took from his coat pocket an envelope containing $1,600 in cash. The insured contended that this qualified as robbery under the policy, given that force was used to effectuate the theft—albeit not to overcome the victim's resistance, but rather to distract the victim so that his pocket could be picked surreptitiously. The insurance company, by contrast, contended that coverage was limited to instances in which force was used to overcome a victim's resistance. The court agreed with the insured, reasoning in essence that a theft amounts to robbery when it is accomplished by any degree of force, whether said force is used to overcome a victim's resistance or to prevent the victim from realizing his property has been taken from him. *Id.* at 301–02. But the court was construing the policy terms rather than the Minnesota criminal code, and for guidance the court consulted the common law (citing precedents from multiple states) rather than the current Minnesota robbery statute, which

would not be enacted for another 46 years.[4] In ruling for the insured, the court also construed the policy against the insurance company (which had authored its terms) and in favor of the insured. *Id.* at 302. The case has no bearing on what constitutes simple robbery under the current Minnesota statute. *See Ward v. United States*, *supra*, 2017 WL 2216394, at *5; *Taylor*, 2017 WL 506253, at *5.

It is true enough, however, that contemporary Minnesota cases do sustain robbery convictions based on the use (or threatened use) of relatively limited force or infliction of minor injuries. *See Slaughter*, 691 N.W.2d at 72, 76 (snatching gold chains from victim's neck, leaving scratches: "these scratches provide sufficient evidence of the 'use of force' necessary to sustain a conviction of simple robbery"); *State v. Nash*, 339 N.W.2d 554, 557 (Minn. 1983) ("if a defendant pushes a victim against a wall and takes his wallet, then the defendant has committed robbery, not theft from the person") (citing Minn. Stat. § 609.24, advisory committee comment (1963)); *State v. Kvale*, 302 N.W.2d 650, 652-53 (Minn. 1981) (running up to and pounding on window of victim's car); *State v. Oksanen*, 249 N.W.2d 464, 466 (Minn. 1977) (per curiam) (grabbing and pushing victim, causing him to fall); *State v. Gaiovnik*, 2010 WL 1439156, at *4 (Minn. Ct. App. April 13, 2010) (non-precedential decision) ("grabbing or yanking [the victim's] arm and pulling on it when she resisted him taking her purse"), *j. aff'd*, 794 N.W.2d 643 (Minn. 2011); *State v. Taylor*, 427 N.W.2d 1, 4 (Minn. Ct App. 1988) (placing hand under shirt, as if holding gun, and telling convenience store occupants to get down on floor). These instances of force might result in minor injuries, such as scratches or reddened skin, or none at all. Jennings com-

---

[4] Notably, a common-law definition of force was what the Supreme Court rejected in *Curtis Johnson*. 559 U.S. at 138-143, 130 S. Ct. at 1270–73.

plains that if the relatively minor manifestations of force in- volved in these cases are deemed to constitute violent force for purposes of section 924(e), then any manner of quotidian physical force—kicks, scratches, shoves, and slaps—will also qualify, which in his view is contrary to *Curtis Johnson*'s con- clusion that "physical force" connotes strong, *i.e.* "*violent* force." 559 U.S. at 140, 130 S. Ct. at 1271 (emphasis in origi- nal). *See Pettis*, *supra*, 2016 WL 5107135, at *3 ("Minnesota's simple-robbery statute … does not require the government to prove that the defendant used a *strong, substantial, or vio- lent* degree of force.") (emphasis ours).

But in suggesting that the force employed must be of such a degree as to cause (or threaten) more serious injuries in order to qualify as violent force, Jennings is setting the bar higher than *Curtis Johnson* itself does. *Curtis Johnson* held that force sufficient to cause physical pain or harm qualifies as violent force. 559 U.S. at 140–41, 130 S. Ct. at 1271. Any number of physical acts may cause physical pain: *Curtis Johnson* itself suggested that a slap in the face might suffice. 559 U.S. at 143, 130 S. Ct. at 1272. Similarly, any number of forceful acts beyond simple touching may in context suffice to inflict bodily harm upon a victim (or instill fear of such harm). Such acts qualify as violent force in the sense that they have the capacity to inflict physical pain, if not concrete physical injury, upon the victim. Justice Scalia's concurrence in *United States v. Castleman*, 134 S. Ct. 1405 (2014), thus makes the point that physical actions such as hitting, slap- ping, shoving, grabbing, pinching, biting, and hair-pulling all qualify as violent force under *Curtis Johnson*: "None of those actions bears any real resemblance to mere offensive touching, and all of them are capable of causing physical pain or injury." *Id.* at 1421 (Scalia, J., concurring in part and

concurring in the judgment).[5] Because he was the author of the majority opinion in *Curtis Johnson*, courts have treated his concurrence on this point as more authoritative than it otherwise might be. *See United States v. Harris*, 844 F.3d 1260, 1265 (10th Cir. 2017), *pet'n for cert. filed*, No. 16-8616 (U.S. April 4, 2017); *United States v. Hill*, 832 F.3d 135, 142 (2d Cir. 2016); *United States v. Rice*, 813 F.3d 704, 706 (8th Cir.), *cert. denied*, 137 S. Ct. 59 (2016); *Taylor*, *supra*, 2017 WL 506253, at *2.

For all of these reasons, we remain convinced that *Maxwell* was correctly decided, and that Minnesota simple robbery constitutes a crime of violence for purposes of section 924(e).

**B.**

This brings us to Jennings' two convictions for felony domestic assault. Minnesota law provides that an individual is guilty of misdemeanor domestic assault if he takes one of the following actions against a family member: "(1) commits an act with intent to cause fear in another of immediate bodily harm or death; or (2) intentionally inflicts or attempts to inflict bodily harm upon another." § 609.2242, subd. 1. The offense becomes a felony if committed "within ten years of

---

[5] The majority in *Castleman* concluded that 18 U.S.C. § 922(g)(9), which proscribes the possession of a firearm by one convicted of a misdemeanor crime of domestic violence—defined in relevant part as a crime committed against a family member or intimate partner that has as an element the use or attempted use of physical force, *see* 18 U.S.C. § 921(a)(33)(A)(ii)—incorporates the common-law definition of force, including offensive touching. 134 S. Ct. at 1410. Justice Scalia disagreed on that point, but he thought that *Curtis Johnson*'s definition of "physical force" was sufficient to encompass most criminal acts characterized as domestic violence and to include the defendant's prior conviction in the case before the Court.

the first of any combination of two or more previous qualified domestic violence-related offense convictions … ." § 609.2242, subd. 4. As noted above, bodily harm is defined to include "physical pain or injury, illness, or any impairment of physical condition." Minn. Stat. § 609.02, subd. 7.

Having in mind that what *Curtis Johnson* defines as violent force is the use or threatened use of force "capable of causing physical pain or injury to another person," 559 U.S. at 140, 130 S. Ct. at 1271, one may readily conclude, as we did in *United States v. Yang*, *supra*, 799 F.3d at 756, that a felony domestic assault as defined by Minnesota constitutes a crime of violence. The statute envisions action by the defendant that either inflicts physical pain or injury on the victim or places the victim in fear of immediate pain or injury. *Id.*; s*ee also Yates v. United States*, 842 F.3d 1051, 1053 (7th Cir. 2016) (criminal statute proscribing the intentional infliction of bodily harm—defined to mean physical pain or injury, illness, or any impairment of physical condition—upon a victim "tracks what *Curtis Johnson* said would suffice: force capable of causing physical pain or injury to another person"), *cert. denied*, 137 S. Ct. 1392 (2017). Jennings suggests that *Yang* was wrongly decided on two grounds, but we find neither of his arguments persuasive.

Jennings' first contention is that the domestic assault statute, although it requires the infliction of bodily harm on the victim (or instilling the fear of such harm), does not require an act of physical force to be the agent of such harm. As our colleagues in the First Circuit put it when confronted with comparable statutory language, "the text [of the statute] … speaks to the 'who' and the 'what' of the offense, but not the 'how,' other than requiring 'intent'." *Whyte v. Lynch*, 807 F.3d 463, 468 (1st Cir. 2015). Because the statute does not

speak to the means of inflicting harm, Jennings believes it possible that one could commit domestic assault in Minnesota without actually employing physical force. By way of illustration, he suggests that a parent might be guilty of domestic assault if he inflicts harm on his child by withholding food. Jennings Br. 23.

The notion that an offense cannot qualify as a violent crime unless the underlying statute expressly requires *both* the infliction of bodily harm *and* the employment of physical force to inflict that harm is one that has found favor in a number of circuits. *See, e.g.*, *Whyte*, 807 F.3d at 468–69, 471 (concluding that Connecticut third-degree assault does not constitute a crime of violence under 18 U.S.C. § 16(a), because although relevant subsection of statute requires the intentional infliction of bodily harm on another person, it does not specify that the harm must be inflicted by way of physical force); *United States v. Torres-Miguel*, 701 F.3d 165, 168–69 (4th Cir. 2012) (willfully threatening to commit crime resulting in death or great bodily injury to another, as proscribed by California statute, does not constitute crime of violence for purposes of unlawful entry guideline, U.S.S.G. § 2L1.2, because statute does not require threatened use of physical force); *United States v. Villegas-Hernandez*, 468 F.3d 874, 879 (5th Cir. 2006) (assault as defined by Texas penal code does not constitute crime of violence under 18 U.S.C. §16 because statute requires that defendant intentionally, knowingly, or recklessly causes bodily injury to another but does not require that he do so by means of physical force; "[s]uch injury could result from any of a number of acts, without use of 'destructive or violent force,' [*e.g.*,] making available to the victim a poisoned drink while reassuring him the drink is safe, or telling the victim he can safely back

his car out while knowing an approaching car driven by an independently acting third party will hit the victim").

But this is a line of reasoning that we have considered and rejected on multiple occasions. *See LaGuerre v. Mukasey*, 526 F.3d 1037, 1039 (7th Cir. 2008) (per curiam); *United States v. Rodriguez-Gomez*, 608 F.3d 969, 973–74 (7th Cir. 2010); *De Leon Castellanos v. Holder*, 652 F.3d 762, 766–67 (7th Cir 2011); *United States v. Waters*, 823 F.3d 1062, 1065-66 (7th Cir.), *cert. denied*, 137 S. Ct. 569 (2016); *United States v. Bailey*, — F. App'x —, 2017 WL 716848, at *1 (7th Cir. Feb. 23, 2017) (non-precedential decision). These cases reason that a criminal act (like battery) that causes bodily harm to a person necessarily entails the use of physical force to produce the harm. *See De Leon Castellanos*, 652 F.3d at 766; *Waters*, 823 F.3d at 1065–66. Obviously this is true when the defendant inflicts the harm directly by making forceful physical contact with the victim: punching or kicking him, for example. *See Castleman*, *supra*, 134 S. Ct. at 1415 (majority opinion). It is also true, though less obviously so, when the defendant deliberately exposes the victim to a harmful agent (*e.g.*, a toxin, lethal biological agent, or hidden explosive) without actually making contact with the victim's person, let alone in a way typically thought of as violent. Delivering the agent (slipping poison into the victim's drink or secreting the explosive in the victim's bag) may itself involve only a minimal degree of physical force, but the proper focus here is on the physical force inherent in the harmful agent itself—force that works a direct and potentially devastating physical harm on the body of the victim. *Id.* ("The 'use of force' in Castleman's example is not the act of 'sprink[ling]' the poison [into the victim's drink]; it is the act of employing poison knowingly as a device to cause harm."); *see also*, *e.g.*, *United States v. De La*

*Fuente*, 353 F.3d 766, 771 (9th Cir. 2003) (concluding that mailed threat to injure by means of anthrax poisoning qualifies as a threat to employ violent force, in that "the [anthrax] bacteria's physical effect on the body is no less violently forceful than the effect of a kick or a blow"). The same is true when the defendant uses guile or deception to trick his victim into consuming the harmful agent: although he is using intellectual force to deploy the harmful agent, the agent itself will, through a physical process, work a concrete harm on the victim. *See id.; Waters*, 823 F.3d at 1066; *De Leon Castellanos*, 652 F.3d at 766–67; *see also United States v. Calderon-Pena*, 383 F.3d 254, 270 (5th Cir. 2004) (en banc) (Smith, J., dissenting) ("If someone lures a poor swimmer into waters with a strong undertow in order that he drown, or tricks a victim into walking toward a high precipice so that he might fall," for example, the offender "has at least attempted to make use of physical force against the person of the target, either through the action of water to cause asphyxiation or by impact of earth on flesh and bone. However remote these forces may be in time or distance from the defendant, they were still directed to work according to his will, as surely as was a swung fist or a fired bullet.").

Jennings' hypothetical as to the denial of food to a child is, as a matter of logic, a more challenging one to place within the category of violent offenses in two respects: (1) the mechanism of harm is the withholding of something that is necessary to sustain life rather than the deployment of something (be it a swing of the arm or the poisoning of a drink) that actively causes pain or injury; and (2) it is more difficult to identify the particular "force" involved. To take the latter point first, if a defendant has the ability to withhold life-sustaining food or medication, then the victim is likely disa-

bled from sustaining himself by a circumstance like age, infirmity, or captivity—a vulnerability that renders him subject to the defendant's control. The relevant "force" may simply be the exertion of that control with the aim of physically harming the victim. And, to take the second point, why should it matter that the mechanism of harm is negative (pinching off the victim's oxygen supply or withholding an EpiPen® in the midst of a severe allergic reaction) or positive (swinging a fist or administering a poison). If the natural and intended result of that force is physical pain, injury, or illness, then arguably the force employed is "violent" force in the sense that *Curtis Johnson* requires. *See Waters*, 823 F.3d at 1066 (positing that withholding of medication constitutes the use of violent physical force for that reason).

The dispositive point against Jennings' argument, however, is that he is unable to cite any cases supporting his theory that withholding food from one's child might be prosecuted as domestic assault in Minnesota. A likely explanation is that other Minnesota statutes cover such scenarios. *See* Minn. Stat. §§ 609.377 (malicious punishment of child); 609.378 (neglect or endangerment of child). So a prosecution for domestic assault based on the withholding of food, medicine, or the like might be a purely abstract possibility.

As the government reminds us, the Supreme Court has cautioned us not to allow our "legal imagination[s]" to roam too freely in postulating what types of conduct theoretically might be prosecuted under a state statute for purposes of determining whether the offense as defined qualifies as a predicate offense for adverse federal action. *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 127 S. Ct. 815, 822 (2007). The issue before the Court in *Duenas-Alvarez* was whether a conviction

under a California statute prohibiting the taking of a vehicle without the owner's consent constituted a generic "theft offense" under 8 U.S.C. 1101(a)(43)(G), rendering a lawful permanent resident subject to removal from the country. The statute penalized accomplices as well as principals. Duenas-Alvarez argued that California law defined "aiding and abetting" in such a way as to criminalize conduct that would not be reached by generic theft laws. The Court rejected that argument and concluded its discussion with the following admonition:

> [T]o find that a state statute creates a crime outside the generic version of a listed crime in a federal statute requires more than the application of legal imagination to a state statute's language. It requires a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime. To show that realistic probability, an offender, of course, may show that the statute was so applied in his own case. But he must at least point to his own case or other cases in which state courts in fact did apply the statute in the special (nongeneric) manner for which he argues.

549 U.S. at 93, 127 S. Ct. at 822; *see also Moncrieffe v. Holder*, 133 S. Ct. 1678, 1684–85 (2013). We have heeded this advice, as have other courts, in the related context assessing whether a predicate state crime has, as an element, the use of force as defined by *Curtis Johnson*. *See Maxwell*, 823 F.3d at 1062 ("Maxwell cannot rely on fanciful hypotheticals not applicable in real world contexts (apart from law school exams) to

show that the Minnesota statute is broader than the Sentencing Guidelines[']" definition of a crime of violence); *see also*, *e.g.*, *Hill*, 832 F.3d at 141 n.8; *United States v. Ceron*, 775 F.3d 222, 229 (5th Cir. 2014) (per curiam); *United States v. Ayala-Nicanor*, 659 F.3d 744, 748, 752 (9th Cir. 2011).

As we have nothing more than speculation to support the notion that an act like withholding food or medicine realistically might be prosecuted as domestic assault in Minnesota, we may discount this possibility. *Maxwell*, 823 F.3d at 1062. Because domestic assault, as defined, requires the infliction of bodily harm (or the threat of such harm) and typically such harm will be inflicted by means of physical force, we decline to overrule our decision in *Yang*.

In his reply brief, Jennings defaults to the same point he makes with respect to simple robbery in Minnesota—that even minor injuries will suffice as bodily harm, and that minimal injuries are insufficient to show that strong, i.e., "violent," physical force was employed as *Curtis Johnson* demands. And that point we have already dealt with above.

### III.

As Jennings had one prior conviction for simple robbery and two prior convictions for felony domestic assault, and these constitute crimes of violence for all of the reasons we have discussed, the district court appropriately treated him as an armed career criminal. Jennings was, consequently, subject to the 15-year minimum prison term mandated by the ACCA and to the various enhancements specified by the armed career criminal guideline.

AFFIRMED.