# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued May 8, 2018           Decided June 22, 2018

No. 16-3123

UNITED STATES OF AMERICA,
APPELLEE

v.

MARLON HAIGHT,
APPELLANT

Consolidated with 17-3002

Appeals from the United States District Court
for the District of Columbia
(No. 1:15-cr-00088-1)

*Jenifer Wicks* argued the causes and filed the briefs for appellant/cross-appellee.

*Luke M. Jones* and *Lauren R. Bates*, Assistant U.S. Attorneys, argued the causes for appellee/cross-appellant. With them on the briefs were *Jessie K. Liu*, U.S. Attorney, and *Elizabeth Trosman*, *Nicholas P. Coleman*, and *Christopher Macchiaroli*, Assistant U.S. Attorneys.

Before: GARLAND, *Chief Judge*, and KAVANAUGH and SRINIVASAN, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* KAVANAUGH.

KAVANAUGH, *Circuit Judge*:  A jury convicted Marlon Haight of several drug- and gun-related offenses.  The District Court sentenced Haight to 12 years and 8 months in prison.

Haight appeals his conviction on three grounds.  He challenges the District Court's refusal to postpone his trial.  He contests two of the District Court's evidentiary rulings at trial.  And he raises an ineffective assistance of counsel claim.  We affirm Haight's conviction except that, consistent with our ordinary practice, we remand for the District Court to address Haight's ineffective assistance claim in the first instance.

The Government cross-appeals Haight's sentence.  The Government argues that Haight was subject to a 15-year mandatory-minimum sentence under the Armed Career Criminal Act because of Haight's three prior convictions for violent felonies and serious drug offenses.  We agree with the Government.  We therefore vacate Haight's sentence and remand for resentencing.

I

In 2014, the Metropolitan Police Department of Washington, D.C., received a tip that a man known as Boo was selling crack cocaine in the Lincoln Heights neighborhood of Washington.  The tip came from Blaine Proctor, a cocaine user and long-time police informant.  Proctor claimed to have bought cocaine from Boo on several occasions.

Proctor gave the police Boo's cell-phone number.  Police Officer Herbert LeBoo ran the cell-phone number through a subscriber database and determined that the number belonged to Marlon Haight.  Officer LeBoo then ran the name Marlon

Haight through another database and matched the name to a photograph. Officer LeBoo showed the photograph to Proctor, who said, "That's Boo."

Under Officer LeBoo's supervision, Proctor then made three controlled purchases of crack cocaine from Boo. After the third controlled purchase, police officers executed a search warrant at the apartment where Boo had sold the cocaine to Proctor. No one answered the door, so the officers used a battering ram to enter the apartment. While most of the officers were breaking down the door, Officer Clifford, who was standing outside the apartment building, saw two men jump from one of the building's windows and run away before they could be apprehended. Officer Clifford later testified that he was "90 percent" sure that one of the jumpers was Marlon Haight, whose photo Officer Clifford had studied earlier that day.

Meanwhile, the other officers finished breaking down the door and entered the apartment. There, they found Russell Ferguson. Ferguson lived in the apartment. Ferguson denied that Haight was selling cocaine from the apartment. But Ferguson later cooperated with the police and changed his tune: He testified that he had allowed Haight and four other men to use his apartment to process and sell crack cocaine.

The police officers searched Ferguson's apartment and found cocaine, cocaine base, crack cocaine in small plastic bags, a scale, baking soda, and hundreds of empty plastic bags. They also found marijuana, a loaded handgun, ammunition, cash, and a cell phone with a picture of Haight on its home screen.

In the bedroom, the police saw that the screen to one of the windows had been pushed out. They found another cell phone

sitting on the window sill. The police later determined that Haight had purchased that cell phone.

About a month later, the police located and arrested Haight. The police then applied for a search warrant to search Haight's own apartment. While they were waiting for the warrant, the police staked out Haight's apartment building. They saw Haight's girlfriend leave the building carrying a backpack. They stopped her and eventually searched the backpack. In the backpack, the officers found several pounds of marijuana, Haight's employment documents, and a sheaf of handwritten papers. The handwritten papers turned out to be rap lyrics and a skit script that included Haight's name and expressed Haight's desire to deal drugs in Lincoln Heights. Later that day, after securing the search warrant for Haight's apartment, the police searched the apartment. There, they found another gun and more ammunition.

The Government charged Haight with numerous drug and gun crimes. The jury found Haight guilty on six counts.

At sentencing, the Government argued that Haight was subject to a 15-year mandatory-minimum sentence based on his three prior convictions for violent felonies and serious drug offenses. The District Court ruled that one of the three convictions did not qualify as a violent felony. The District Court therefore concluded that Haight was not subject to the 15-year mandatory-minimum sentence. The District Court sentenced Haight to 12 years and 8 months in prison.

Haight appeals his conviction. The Government cross-appeals Haight's sentence.

II

In appealing his conviction, Haight first challenges the District Court's denial of his motion to postpone his trial. Haight also contests the District Court's decision to admit into evidence: (i) Officer LeBoo's testimony about Proctor's out-of-court statement identifying Haight; and (ii) the writings found in the backpack carried by Haight's girlfriend. Finally, Haight claims that his trial counsel was ineffective.

A

Haight's trial was originally scheduled to start in September 2015. Between September 2015 and February 2016, Haight moved three times to postpone the trial. The District Court granted each of those motions, eventually setting a June 2016 trial date. After granting the third motion and setting the June 2016 trial date, the District Court warned that Haight would need a compelling reason to postpone the trial any further.

In February 2016, the District Court held an evidentiary hearing on Haight's motion to suppress the writings found in the backpack. In early May, the District Court said that it was likely to deny Haight's motion to suppress the writings. In early June, two weeks before trial, the Government moved in limine to introduce the writings into evidence. Haight responded with a fourth request to postpone the trial. Haight argued that he needed more time to decide how to address the writings and to consult with a handwriting expert.

The District Court denied Haight's motion to further postpone the trial. On appeal, Haight contends that the District Court abused its discretion in denying his motion. We disagree.

Recognizing that "judges necessarily require a great deal of latitude in scheduling trials," we review a district court's denial of a motion to postpone a trial under the deferential abuse-of-discretion standard. *United States v. Gantt*, 140 F.3d 249, 256 (D.C. Cir. 1998). We expect district courts to weigh various commonsense factors, including the reasons for the requested postponement; the length of the requested postponement; whether any postponements have already been granted; the effect of further delay on the parties, witnesses, attorneys, and court; and whether denying a postponement will result in "material or substantial" prejudice to the defendant's case. *Id.*

The District Court acted well within its discretion here. The court considered the relevant factors and explained why a further postponement was not warranted: Haight had already requested and received three postponements, which had delayed his trial by nine months; Haight's experienced counsel had a month to consider how to address the writings; and the writings did not present any difficult or novel issues that justified further delay. The District Court's refusal to grant yet another postponement was entirely reasonable.

B

We review the District Court's two challenged evidentiary rulings for abuse of discretion. *See United States v. Borda*, 848 F.3d 1044, 1055 (D.C. Cir. 2017).

*First*, Haight argues that the District Court abused its discretion by admitting hearsay testimony. At trial, Officer LeBoo testified about Proctor's initial out-of-court photographic identification of Haight. Haight objected that Officer LeBoo's testimony on that point was inadmissible

hearsay. The District Court disagreed with Haight and admitted the testimony.

Federal Rule of Evidence 802 renders hearsay generally inadmissible. But under Rule 801, a witness's testimony recounting a declarant's out-of-court statement is not hearsay if (i) the declarant's statement "identifies a person as someone the declarant perceived earlier," and (ii) the declarant "testifies and is subject to cross-examination about" the statement. Fed. R. Evid. 801(d)(1)(C). The declarant of the out-of-court statement is ordinarily "regarded as 'subject to cross-examination' when he is placed on the stand, under oath, and responds willingly to questions." *United States v. Owens*, 484 U.S. 554, 561 (1988).

Officer LeBoo's testimony recounting Proctor's out-of-court statement identifying Haight was not hearsay because the testimony fell squarely within Rule 801: (i) Proctor's out-of-court statement – "That's Boo" – identified Haight as someone whom Proctor had perceived earlier, and (ii) Proctor testified at Haight's trial and was subject to cross-examination about that statement.

It is true that Haight's counsel did not actually cross-examine Proctor about the earlier identification of Boo. Defense counsel presumably chose that tack because, on direct examination by the Government, Proctor did not remember having identified Boo to Officer LeBoo. Proctor's memory failure was therefore potentially helpful to Haight's defense and not something for defense counsel to mess with on cross-examination. But Rule 801 was still satisfied. As the Seventh Circuit has stated, a "meaningful opportunity to cross-examine a declarant regarding his prior identification is enough to satisfy the requirements of Rule 801, even if," for strategic or other reasons, "the defendant chooses not to use the

opportunity." *United States v. Foster*, 652 F.3d 776, 789 (7th Cir. 2011). We agree. Officer LeBoo's testimony about Proctor's earlier out-of-court identification of Haight was not hearsay.

Even if the District Court abused its discretion in admitting Officer LeBoo's testimony on that issue, the error was harmless. Officer LeBoo's testimony helped show that Haight and Boo were the same person. But the Government introduced abundant other evidence to establish that fact.

*Second*, Haight maintains that the District Court abused its discretion by admitting the handwritten lyrics and handwritten script that the police found in the backpack carried by Haight's girlfriend. Haight argues that: (i) the writings were not properly authenticated under Rule 901; (ii) the writings constituted prior-acts evidence not admissible under Rule 404(b); and (iii) the probative value of the writings was substantially outweighed by the danger of unfair prejudice under Rule 403. We disagree with Haight.

Under Rule 901, the Government had to "produce evidence sufficient to support a finding that" the writings were what the Government claimed they were: lyrics and a script written by Haight. That authentication evidence could include the "appearance, contents, substance, internal patterns, or other distinctive characteristics" of the writings, "taken together with all the circumstances." Fed. R. Evid. 901(a), (b)(4).

The District Court did not abuse its discretion in concluding that the Government satisfied Rule 901. The Government established that Haight's name appeared on the writings and that the writings were in a backpack that also contained Haight's employment papers. Furthermore, Haight's girlfriend was carrying the backpack, and she had just

brought it out of the apartment that she and Haight shared. *See, e.g.*, *United States v. Mejia*, 597 F.3d 1329, 1335-37 (D.C. Cir. 2010); *United States v. Thorne*, 997 F.2d 1504, 1508 (D.C. Cir. 1993); *United States v. Harvey*, 117 F.3d 1044, 1049 (7th Cir. 1997).

The District Court also did not abuse its discretion in admitting the writings under Rule 404(b). Assuming without deciding that the writings constituted evidence of another "crime, wrong, or other act" within the meaning of Rule 404(b), the District Court admitted the writings for permissible purposes, including identity, knowledge, and intent. *See United States v. Bowie*, 232 F.3d 923, 930 (D.C. Cir. 2000). As the District Court explained, the writings tended to show that Haight: (i) owned the backpack and the marijuana found in the backpack; (ii) knew about guns and drug dealing; (iii) possessed the guns and drugs found in Ferguson's apartment; and (iv) intended to distribute drugs in Lincoln Heights.

Finally, as to Haight's Rule 403 argument, the District Court did not abuse its discretion in concluding that the probative value of the writings outweighed any danger of unfair prejudice.

In short, we reject Haight's evidentiary challenges.

## C

Haight next contends that his counsel's failure to obtain a handwriting expert deprived him of his constitutional right to effective assistance of counsel. Haight asserts that a handwriting expert could have testified that the writings found in the backpack were not in Haight's handwriting.

Unlike most federal courts of appeals, we allow defendants to raise ineffective assistance claims on direct appeal. But because ineffective assistance claims typically require factual development, we ordinarily remand those claims to the district court "unless the trial record alone conclusively shows that the defendant either is or is not entitled to relief." *United States v. Rashad*, 331 F.3d 908, 909-10 (D.C. Cir. 2003); *see also Massaro v. United States*, 538 U.S. 500, 505 (2003) (district court is "the forum best suited to developing the facts necessary to determining the adequacy of representation" at trial). Like most ineffective assistance claims raised on direct appeal, Haight's claim in this case requires further factual development to determine, for example, why Haight's trial counsel did not obtain a handwriting expert. We therefore remand Haight's ineffective assistance claim so that the District Court may consider that issue in the first instance.

III

The District Court sentenced Haight to 12 years and 8 months in prison. The Government cross-appeals the sentence, arguing that Haight was subject to a 15-year mandatory-minimum sentence under the Armed Career Criminal Act, known as ACCA. We agree with the Government and remand for resentencing.

Haight was convicted of violating 18 U.S.C. § 922(g)(1), the federal felon-in-possession statute. ACCA imposes a 15-year mandatory-minimum sentence on defendants who violate Section 922(g) and who have three prior convictions for "a violent felony or a serious drug offense, or both." 18 U.S.C. § 924(e)(1).

When sentenced, Haight had prior convictions for: (1) distribution of cocaine in violation of D.C. law; (2) first-

degree assault under Maryland law; and (3) assault with a dangerous weapon under D.C. law.

In his sentencing submissions to the District Court, Haight accepted that his prior D.C. conviction for distribution of cocaine qualified as a serious drug offense under ACCA. Haight also accepted that his Maryland first-degree assault conviction qualified as a violent felony under ACCA. Haight argued, however, that his D.C. conviction for assault with a dangerous weapon did not qualify as a violent felony under ACCA. Haight therefore maintained that he was not subject to ACCA's 15-year mandatory-minimum sentence because he did not have three prior convictions for violent felonies or serious drug offenses. The District Court agreed with Haight.

On appeal, the Government contends that the District Court erred in concluding that Haight's D.C. assault with a dangerous weapon conviction was not a violent felony under ACCA. We review the District Court's interpretation of ACCA de novo. *See United States v. Mathis*, 963 F.2d 399, 404 (D.C. Cir. 1992).

In response, Haight not only argues that his D.C. assault with a dangerous weapon conviction is not a violent felony, but also contends – for the first time – that his Maryland first-degree assault conviction is not a violent felony. Because Haight did not raise that latter argument in the District Court, we review that claim for plain error. *See United States v. Sheffield*, 832 F.3d 296, 311 (D.C. Cir. 2016).

A

We first address whether Haight's D.C. conviction for assault with a dangerous weapon qualifies as a conviction for a violent felony under ACCA.

As relevant here, ACCA defines "violent felony" to include, among other things, "any crime punishable by imprisonment for a term exceeding one year" that "has as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i). The Supreme Court has stated that "physical force" in that provision means "*violent* force – that is, force capable of causing physical pain or injury to another person." *Johnson v. United States*, 559 U.S. 133, 140 (2010).

In determining whether a given conviction qualifies as a violent felony under ACCA, we employ the so-called categorical approach, examining only the elements of the crime, not the particular facts underlying the defendant's prior conviction. *See Taylor v. United States*, 495 U.S. 575, 600 (1990). In other words, we assess the crime categorically, "in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion." *Begay v. United States*, 553 U.S. 137, 141 (2008). If the law defines the crime in such a way that it can be committed using either violent or non-violent force, then the crime is not a violent felony under ACCA, even if the defendant actually used violent force in committing the crime. *See United States v. Redrick*, 841 F.3d 478, 482 (D.C. Cir. 2016).

The elements of D.C. assault with a dangerous weapon are: "(1) an attempt, with force or violence, to injure another, or a menacing threat, which may or may not be accompanied by a specific intent to injure; (2) the apparent present ability to injure the victim; (3) a general intent to commit the acts which constitute the assault; and (4) the use of a dangerous weapon in committing the assault." *Spencer v. United States*, 991 A.2d 1185, 1192 (D.C. 2010). A "dangerous weapon" is an object that is "likely to produce death or great bodily injury by the use

made of it." *Powell v. United States*, 485 A.2d 596, 601 (D.C. 1984) (emphasis removed).

The elements of the offense indicate that the D.C. crime of assault with a dangerous weapon qualifies as a violent felony under ACCA. *See United States v. Brown*, No. 15-3056, 2018 WL 2993179, at *12-13 (D.C. Cir. June 15, 2018) (D.C. assault with a dangerous weapon is crime of violence under Sentencing Guidelines); *In re Sealed Case*, 548 F.3d 1085, 1089 (D.C. Cir. 2008) (equivalent ACCA and Guidelines provisions are interpreted the same way).

Haight raises two separate arguments against that conclusion.

*First*, Haight claims that the D.C. offense of assault with a dangerous weapon can be committed with so-called indirect force, such as using a hazardous chemical to burn someone, rather than with more direct force, such as using a gun or a knife to maim someone. *See, e.g.*, *Sloan v. United States*, 527 A.2d 1277 (D.C. 1987) (lye); *Bishop v. United States*, 349 F.2d 220 (D.C. Cir. 1965) (sulphuric acid). And he claims that the use of indirect physical force does not qualify as the use of physical force under this statute. We do not perceive any such distinction between direct and indirect force in the language of the statute or in the relevant precedents. Moreover, in *United States v. Castleman*, 134 S. Ct. 1405 (2014), the Supreme Court addressed a similar statute referencing prior crimes committed with "physical force," and the Court refused to distinguish indirect physical force from direct physical force. In the Supreme Court's analysis, it did not matter what tool or method the defendant may have used to harm the victim. *See id.* at 1414-15. Of course, ACCA requires that the physical force be *violent* force – that is, "force capable of causing physical pain or injury to another person." *Johnson*, 559 U.S. at 140. But by

analogy from *Castleman*, so-called indirect violent force is still violent force.

In so concluding, we agree with ten other federal courts of appeals that have addressed the question either in the ACCA context or in equivalent contexts. *See United States v. Ellison*, 866 F.3d 32, 37-38 (1st Cir. 2017) (Guidelines); *United States v. Hill*, 832 F.3d 135, 143-44 (2d Cir. 2016) (18 U.S.C. § 924(c)(3)); *United States v. Chapman*, 866 F.3d 129, 132-33 (3d Cir. 2017) (Guidelines); *United States v. Reid*, 861 F.3d 523, 528-29 (4th Cir. 2017) (ACCA); *United States v. Verwiebe*, 874 F.3d 258, 261 (6th Cir. 2017) (Guidelines); *United States v. Jennings*, 860 F.3d 450, 458-60 (7th Cir. 2017) (ACCA and Guidelines); *United States v. Rice*, 813 F.3d 704, 706 (8th Cir. 2016) (Guidelines); *Arellano Hernandez v. Lynch*, 831 F.3d 1127, 1131 (9th Cir. 2016) (18 U.S.C. § 16); *United States v. Ontiveros*, 875 F.3d 533, 536-38 (10th Cir. 2017) (Guidelines); *United States v. Deshazior*, 882 F.3d 1352, 1357-58 (11th Cir. 2018) (ACCA). *But see United States v. Rico-Mejia*, 859 F.3d 318, 322-23 (5th Cir. 2017).

*Second*, Haight contends that D.C. assault with a dangerous weapon can be committed recklessly, and therefore does not categorically require the use of violent force "against the person of another" within the meaning of ACCA.

Haight's recklessness argument contravenes the Supreme Court's recent decision in *Voisine v. United States*, 136 S. Ct. 2272 (2016). There, in interpreting Section 922(g)'s provision for misdemeanor crimes of domestic violence, the Court held that *reckless* domestic assault involves the use of physical force. *Id.* at 2278-80; *see* 18 U.S.C. §§ 921(a)(33)(A)(ii), 922(g)(9). Focusing on the word "use," the Court reasoned that the word is "indifferent as to whether the actor has the mental state of intention, knowledge, or recklessness with respect to

the harmful consequences of his volitional conduct." *Voisine*, 136 S. Ct. at 2279.

The statutory provision at issue in *Voisine* contains language nearly identical to ACCA's violent felony provision: Both provisions penalize defendants convicted of crimes that have "as an element" the "use" of "physical force." 18 U.S.C. §§ 921(a)(33)(A)(ii), 924(e)(2)(B)(i). So *Voisine*'s reasoning applies to ACCA's violent felony provision. As long as a defendant's use of force is not accidental or involuntary, it is "naturally described as an active employment of force," regardless of whether it is reckless, knowing, or intentional. *Voisine*, 136 S. Ct. at 2279.

It is true that ACCA requires a defendant to use violent force "against the person of another" – a phrase that does not appear in the statutory provision that the Supreme Court considered in *Voisine*. But the provision at issue in *Voisine* still required the defendant to use force against another person – namely, the "victim." 18 U.S.C. § 921(a)(33)(A)(ii). In the words of the Supreme Court in *Voisine*, the phrase "misdemeanor crime of domestic violence" is "defined to include any misdemeanor committed against a domestic relation that necessarily involves the 'use . . . of physical force.'" *Voisine*, 136 S. Ct. at 2276 (quoting 18 U.S.C. § 921(a)(33)(A)(ii)).

In light of *Voisine*, we conclude that the use of violent force includes the reckless use of such force. In so concluding, we agree with four other courts of appeals that have addressed the issue either in the ACCA context or in the equivalent Guidelines "crime of violence" context. *See United States v. Mendez-Henriquez*, 847 F.3d 214, 220-22 (5th Cir. 2017) (Guidelines); *United States v. Verwiebe*, 874 F.3d 258, 262 (6th Cir. 2017) (Guidelines); *United States v. Fogg*, 836 F.3d 951,

956 (8th Cir. 2016) (ACCA); *United States v. Pam*, 867 F.3d 1191, 1207-08 (10th Cir. 2017) (ACCA).  We recognize that the First Circuit has reached a contrary conclusion, but we respectfully disagree with that court's decision.  *See United States v. Windley*, 864 F.3d 36 (1st Cir. 2017).

In sum, we conclude that Haight's D.C. conviction for assault with a dangerous weapon counts as a violent felony under ACCA.

B

We conclude that the District Court did not err, much less plainly err, in classifying Haight's Maryland first-degree assault conviction as a violent felony under ACCA.

Maryland first-degree assault is defined as follows:  "(1) A person may not intentionally cause or attempt to cause serious physical injury to another.  (2) A person may not commit an assault with a firearm."  Md. Code, Crim. Law § 3-202(a).  To convict a defendant of first-degree assault, the government must prove that the defendant committed a second-degree assault and either (1) "used a firearm to commit assault" or (2) "intended to cause serious physical injury in the commission of the assault."  Md. Crim. Pattern Jury Instr. 4:01.1.

As with D.C. assault with a dangerous weapon, the additional elements that convert Maryland second-degree assault into first-degree assault – the use of a firearm or the intention to cause serious physical injury – require the defendant to use, attempt to use, or threaten to use violent force against another person.  The District Court did not err – much less plainly err – in reaching that commonsense conclusion, which is the same conclusion reached by the only federal court

of appeals to have considered the question. *See United States v. Redd*, 372 F. App'x 413, 415 (4th Cir. 2010) ("Because the elements of first-degree assault under Maryland law encompass the use or attempted use of physical force," the defendant's two convictions for first-degree assault "categorically qualify as ACCA predicates.").

In sum, Haight had three ACCA-predicate convictions. As a result, Haight was subject to a 15-year mandatory-minimum sentence under ACCA. We therefore remand for resentencing.

\* \* \*

As to Haight's conviction, we affirm the judgment of the District Court except that we remand for the District Court to address Haight's ineffective assistance claim in the first instance. As to Haight's sentence, we vacate the judgment of the District Court and remand for resentencing.

*So ordered.*