**Ray Eugene LANE, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 1025–86.

Court of Criminal Appeals of Texas, En Banc.

Jan. 25, 1989.

Michael Logan Ware, Fort Worth, for appellant.

Tim Curry, Dist. Atty., and C. Chris Marshall, Delonia A. Watson, George Gallagher and Scott Wisch, Asst. Dist. Attys., Fort Worth, Robert Huttash, State's Atty., Austin, for the State.

OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

CLINTON, Judge.

Appellant was convicted of robbery pursuant to V.T.C.A., Penal Code § 29.02(a)(1), enhanced by two prior convictions, and was sentenced to thirty years confinement in the Texas Department of Corrections. On appeal, his conviction was reversed by the court of appeals in a published opinion. *Lane v. State,* 713 S.W.2d 223 (Tex.App.— Fort Worth 1986). The court of appeals found the evidence insufficient to support the verdict because the State failed to prove appellant intentionally and knowingly caused bodily injury to the complainant. We granted the State's Petition for Discretionary Review because the court of appeals' opinion appears to be in conflict with previous decisions of this Court. Tex.R. App.Pro., R. 200(c)(3).

I.

The record reflects that on April 6, 1985, at about 10:30 p.m., Officer Kathryn Manning of the Fort Worth police Department was working undercover as a police decoy

posing as a stranded motorist. She was seated in an unmarked Oldsmobile, which was parked off the road, its hood open and its hazard lights flashing to give the impression that the vehicle had become inoperative. Other police officers were hidden nearby maintaining surveillance visually and also by way of a body microphone taped to Manning's waist.

As appellant and another male walked by the car, appellant turned around and asked, "Hey, baby, what's wrong with it?" Officer Manning got out of the car, replied, "I don't know, it's just broke," and asked appellant to go and call someone to help her. Appellant said, "Give me $12.00," and then reached for Manning's purse, which was hanging from her arm. Manning pulled her wallet from her purse, and then, according to Manning, "With both of his hands he grabbed the top of the wallet and my fingers, and pulled it back to him. From here, it was just a back and forth twisting struggle over the purse."

During the struggle over the wallet, Manning sustained a red and purple bruise on her wrist, which resulted from its being twisted by appellant. Appellant eventually was able to jerk the wallet from Manning, turn and run away. As he did so, he was surrounded by the other police officers who had been observing the incident.

At the guilt/innocence phase of appellant's trial, Manning testified that she suffered physical pain to her wrist resulting from the struggle with appellant over her wallet. She was neither struck nor pushed down by appellant in his attempt to obtain her wallet and appellant in fact never touched her wrists.[1] Because he merely pulled and twisted the wallet from Manning's hands, the court of appeals held the injury she suffered was not intentionally or

knowingly inflicted.[2] Therefore, the evidence was insufficient to support the conviction.

In holding the evidence insufficient, the court of appeals, in an attempt to identify the legislative intent of the robbery statute, quoted the practice commentary to § 29.02, supra, as follows: "As in prior law, the *violence* used or threatened must be for the purpose of ... preventing or overcoming resistance to the theft." 713 S.W.2d at 224. (Emphasis by the court of appeals.) From this premise the court opined, "We do not believe that the pulling and twisting of the wallet by appellant was the type of 'violence' the legislature had in mind when enacting the statute." *Id.*

## II.

▮ In order to determine whether the evidence is sufficient to establish the offense of robbery, we must first determine whether the pain inflicted on Manning by appellant was bodily injury under our statute. "Bodily injury" is defined as "physical pain, illness, or any impairment of physical condition."[3] This definition appears to be purposefully broad and seems to encompass even relatively minor physical contacts so long as they constitute more than mere offensive touching.[4] In fact, the degree of injury sustained by a victim and the "type of violence" utilized by an accused appear to be of no moment, contrary to the court of appeals opinion here. We have previously held the evidence sufficient to establish the element of bodily injury when a complainant testified she suffered physical pain when the defendant grabbed her briefcase and twisted her arm back, causing her to sustain a small bruise during the struggle. *Lewis v. State*, 530 S.W.2d 117 (Tex.Cr.App.1975). In *Lewis*, supra, we re-

---

1. The court of appeals' conclusion that appellant never touched Manning at all is erroneous. She testified both on direct and crossexamination that he grabbed her fingers during the struggle.

2. V.T.C.A., *Penal Code* § 29.02(a)(1) states in pertinent part:
    "(a) A person commits an offense if, in the course of committing theft ... and with intent to obtain or maintain control of the property, he:

(1) intentionally, knowingly, or recklessly causes bodily injury to another ..."
    We note that the indictment here failed to allege the culpable mental state of "recklessly."

3. V.T.C.A., *Penal Code* § 1.07(a)(7).

4. G. Reamey, CRIMINAL OFFENSES AND DEFENSES IN TEXAS 355 (1987).

jected the appellant's contention that greater injuries than those actually sustained were necessary to elevate mere "purse snatching" to robbery. *Id.* at 118.

In *Ramirez v. State,* 518 S.W.2d 546 (Tex.Cr.App.1975), we held the terms " 'physical pain,' 'illness' and 'impairment of physical condition' are all terms of common usage, and when construed 'according to the fair import of their terms' in the context used in Section 1.07(a)(7), ... are not 'so vague that men of common intelligence must necessarily guess at its meaning and differ as to their application.' " *Id.* at 547. There, a police officer was' hit in the face by the defendant as she attempted to arrest him. In *Allen v. State,* 533 S.W.2d 352 (Tex.Cr.App.1976), we held the evidence sufficient to support a finding of bodily injury by the jury when a police officer testified he suffered physical pain for four days when kicked in the nose by the defendant.

In a case factually similar to the one at bar, *Cano v. State,* 614 S.W.2d 578 (Tex.Cr. App.1981), the complainant was injured when the defendant ran up and grabbed her purse, and in so doing, "hit" or "pushed" her to the pavement. She testified that as a result of defendant's act of grabbing the purse, he caused her to fall, cutting her mouth so badly that sutures were required. There, we held the evidence sufficient to establish that defendant intentionally or knowingly caused bodily injury to the complainant.

We conclude that so long as the "violence" is clearly perpetrated against another "for the purpose of ... preventing or overcoming resistance to theft," it does not serve the legislative intent to engage in fine distinctions as to degree or character of the physical force exerted. Here, Officer Manning testified that she suffered physical pain when her wrist was twisted by appellant as he attempted to steal her wallet. The bruise on her right wrist corroborates the fact that she was indeed injured to some extent in the struggle. In light of her testimony, the jury was justified in finding that appellant inflicted bodily injury when he grabbed the wallet and twisted it out of her hands.

### III.

The second part of our analysis must focus on whether the appellant possessed the requisite culpability needed to constitute the offense of robbery. As noted previously, the statute provides three possible mental states for robbery by bodily injury.[5] Here, the indictment alleged and the jury was authorized to convict if it found that appellant "intentionally and [or] knowingly ... cause[d] bodily injury to ... Manning by twisting her wrist." We have already determined that Manning did in fact sustain bodily injury inflicted by appellant. The question remains whether the evidence demonstrates appellant acted with knowledge, if not with intent, that bodily injury would be the result of his conduct. See *Lugo–Lugo v. State,* 650 S.W.2d 72, 88 (Tex.Cr.App.1983) (Clinton, J., concurring).

V.T.C.A., Penal Code, § 6.03(b) provides in pertinent part,

"A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result."

Thus the evidence must show at least that in twisting Manning's wrist to obtain her purse, appellant was reasonably certain he would cause her bodily injury.

Establishment of culpable mental states is almost invariably grounded upon inferences to be drawn by the factfinder from the attendant circumstances. We have already held that proof of bodily injury is not dependent upon the severity of the "violence" used, so long as some resulting "physical pain, illness, or any impairment of physical condition" can be identified. The threshold of proof necessary to support a jury finding of an awareness that such a result is reasonably certain to occur is concomitantly low.

At the close of the guilt/innocence phase, the trial court instructed the jury on the definitions of "intentionally" and

---

5. V.T.C.A., Penal Code § 29.02, supra, at note 2.

"knowingly," as well as "bodily injury." The application portion of the charge authorized the jury to convict upon a finding:

"beyond a reasonable doubt that ... [appellant], while in the course of committing theft of property, and with intent to obtain and maintain control of said property, did intentionally or knowingly cause bodily injury to ... Manning by twisting her wrist...."

In light of the above, we hold the jury could have reasonably inferred from the force in appellant's conduct, namely, twisting Manning's wrists to obtain her wallet, that he was at the very least aware that his conduct was reasonably certain to cause her physical pain, and hence, bodily injury.

The judgment of the court of appeals is reversed and the cause is remanded to that court for consideration of appellant's remaining points of error.