**AFFIRM; and Opinion Filed October 23, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-00880-CR

### TRAVARUS ANTWAUN SHEAD, Appellant
### V.
### THE STATE OF TEXAS, Appellee

**On Appeal from the 363rd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F12-55887-W**

## MEMORANDUM OPINION

Before Justices O'Neill, Lang-Miers, and Brown
Opinion by Justice Lang-Miers

A jury found appellant Travarus Antwaun Shead guilty of robbery and assessed his punishment, enhanced with a prior felony conviction, at 30 years in prison. On appeal, appellant argues that the conviction must be reversed because the evidence is insufficient (1) to show he committed the offense or that (2) the victim suffered bodily injury or was threatened or placed in fear of imminent bodily injury or death. We affirm the judgment. We issue this memorandum opinion because the issues are settled. TEX. R. APP. P. 47.2(a), .4.

### FACTUAL BACKGROUND

Jacob Reyna was cleaning out trash cans and performing outside chores at a Shell gas station in Dallas late in the evening on May 14, 2012. He noticed a car on pump five with "like three" individuals. The occupants of the car got out, went to the restroom, bought some things, and got back in the car. Then one man got out of the car and the car drove off without him.

Reyna asked the man if he could be of assistance, and the man "kind of shook his head[.]" Reyna said "the next thing I heard was a lady hollering in the background, help me, call the police, what do you want, get away from me." He saw a lady "trying to hang on to her purse as much as she possibly could." She was struggling with the man he saw get out of the car earlier. They struggled and fell to the parking lot, but the man never got the lady's purse. Reyna called to the station attendant to get help. Then he noticed that the man and lady stopped arguing, the lady stopped hollering, and the man jumped up and drove off in the lady's car.

Laurie Russell testified that on May 14, 2012, she was driving a rental car because her car was in the shop for repairs. She stopped at a Shell gas station around 11 p.m. to buy a cell phone charger because her cell phone battery was dead. A car with four guys was there when she drove up, and she parked in the lane farthest from them. Although the station was open, the inside of the store was closed to customers at that time of night, so she was shopping through the window. She stooped down to look at the phone chargers and "someone yanked [her] purse on the back." A man "jerked" her shoulder "really hard." She was trying to hold onto her purse while the robber was yanking on it, "so he kind of jerked me all over the – a little bit over the parking lot." Video surveillance showed the robber grabbing Russell's purse and the two struggling on the parking lot and around the gas pumps. The robber told Russell to give him the purse. She said that by the time they were by the gas pump, "he said, bitch, give me your purse or I'll shoot you." He said, "[L]ook at this bitch. Bitch, give me the purse or I'll shoot you in the head." She did not see a weapon. He hit her a couple of times on the neck and upper chest area, but she said it did not hurt. During the struggle, they fell to the parking lot, which caused her pain. She sustained scrapes on her back, shoulder, and knees. She said the struggle was "intense" and she had difficulty describing it for the jury. She said, "It was a shock for me." She fell on her purse and the robber was unable to get it. But she dropped her car keys during the struggle, and the

robber picked them up and drove off in her car. Russell saw a cell phone on the ground in the area where they struggled and picked it up. She did not see the cell phone drop during the struggle and did not know if it had been there before the struggle.

While waiting for the police to arrive, Russell called a couple of the numbers that had been recently dialed on the cell phone. She talked to two different women, but neither would give her any information about the phone's owner. Several days later Russell looked at a photo line-up. She said five of the six photos did not match her attacker, but one she was "not sure" about. It was appellant's photograph. Surveillance video from the gas station was not clear enough to identify the robber.

Officer Jakarsha Carter responded to the robbery call. She described Russell as "very upset," "kind of scared," and "shaking a little bit." She said Russell's face was a little red, but she did not have any visible injuries and declined medical treatment. Russell gave the officer the cell phone she found.

Dallas police detective Alberto Layton was assigned to investigate the robbery. He called Russell, who told him what happened and about the cell phone she found. Layton obtained a search warrant for the phone and found appellant's email address on the phone. He also determined that the number assigned to the phone belonged to appellant on the day of the robbery. Appellant was arrested for the robbery a few days later, and Layton interviewed him. Appellant admitted the phone was his, but said he had lost it about two months before. He denied committing the robbery and said he was with his girlfriend the night of the robbery. At the time of the offense, appellant was living with his girlfriend and his girlfriend's twin sister and her boyfriend, Arnald Greagor. The detective told appellant that he was headed to appellant's girlfriend's house to interview her. By the time the detective arrived at the girlfriend's house, appellant had called her and told her to tell the detective he was with her at the time of the

robbery. He also told her to take "her car" to a certain place for a "tune-up." The girlfriend moved the car behind the house and told the detective that appellant was with her at home on the night of the robbery.

Even though the girlfriend confirmed appellant's alibi, Layton still believed appellant was involved. He retrieved contacts, photos, and other data from the phone, including a video of appellant and his girlfriend date-stamped a week before the robbery. Then he knew that appellant had lied about losing his phone a couple of months before. A few days after appellant's arrest, the police stopped the girlfriend while she was driving Russell's rental car and arrested her. The police found appellant's fingerprint on a CD inside the vehicle. Other fingerprints taken from the vehicle were inconclusive—appellant could not be excluded or identified as the person who left those prints. The girlfriend admitted to Layton that she lied about appellant being with her on the night of the robbery. She also told Layton that appellant confessed to her that he committed the robbery.

Greagor, the boyfriend of appellant's girlfriend's twin sister, testified that he had known appellant less than six months and that appellant had been living in Greagor's house. He said appellant came to the house the evening of May 14, 2012, in a new car and "was trying to use the [house] phone." Appellant said he lost his cell phone. Eventually appellant told Greagor that he got the car from a lady at a Shell gas station. Greagor testified that appellant said he was trying to "get some money or something from the lady and started wrestling with her and he couldn't get no money, so he took the car." Appellant said he "was just tussling with her to get her purse, and she fell on her purse, trying to – trying to hold on to the purse, and he took the car."

While appellant was in jail awaiting trial, he wrote letters to his girlfriend and Greagor. He told Greagor he could "plead the 5th" or "tell the jury that the D.A. told you to make these

false charges against me or they will give you a lot of time." He said "just tell them folks the truth I didn't do it." He told his girlfriend,

> All you got to do is not show up, and if you do just tell the jury you said what you said to detective because they said they would take your kids and give you a lot of prison time so out of fear you only told all they told you to say on recorder or write on paper. That easy. And then you can refuse any more ?'s or just tell them you would like to plead the 5th – meaning you don't have to say shit. Best option just don't show up.

Appellant testified in his defense and denied committing the robbery. He said he got off work from his regular job at 3 p.m. on May 14, 2012, and took the bus and a train to his sister-in-law's house in Plano where he helped her with her non-profit organization called Cheer Life Foundation. He said he talks to a group of kids to try to prevent them from joining gangs and from "liv[ing] the same type of lifestyle that I used to live[.]" When he left there, he went to his sister's house, which he said was more than 10 to 20 miles from Plano. His sister dropped him off at his girlfriend's house around 10:30 p.m. He said he gave his cell phone to Greagor that morning before he left for work and lied about it to the detective "to cover basically for Arnald." Appellant said Greagor drove the stolen vehicle to the house and was using it after the date of the offense. He said he rode in the stolen car "like twice" but "told them to drop me off at the bus stop[.]" He also said the service to his phone was disconnected in March of that year, so it had "been off, you know, a couple of months already. The only thing you could basically do on the phone is use it as a walkie-talkie or – or alarm . . . ." He said he gave it to Greagor that day because Greagor did not have a watch and needed to use it "to wake up later on that day[.]" When asked how Russell was able to use the phone to make calls after the robbery, appellant said, "That's a total lie." He said there was "no way" she could have used his phone to make calls because "[i]t was impossible."

**STANDARD OF REVIEW AND APPLICABLE LAW**

When an appellant challenges the sufficiency of the evidence to support a conviction, we review all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012). Evidence is sufficient if "the inferences necessary to establish guilt are reasonable based upon the cumulative force of all the evidence when considered in the light most favorable to the verdict." *Id.* If the evidence is conflicting, we "'presume that the factfinder resolved the conflicts in favor of the prosecution' and defer to that determination." *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 326 (1979)). This standard is the same for both direct and circumstantial evidence. *Id.*

A person commits robbery when

in the course of committing theft as defined in Chapter 31 and with intent to obtain or maintain control of the property, he:

(1) intentionally, knowingly, or recklessly causes bodily injury to another; or

(2) intentionally or knowingly threatens or places another in fear of imminent bodily injury or death.

TEX. PENAL CODE ANN. § 29.02 (West 2011). The indictment charged that appellant

did then and there intentionally and knowingly, while in the course of committing theft of property and with intent to obtain or maintain control of said property, threaten or place LAURIE RUSSELL in fear of imminent bodily injury and death,

and further, said defendant did then and there intentionally and knowingly, while in the course of committing theft of property and with intent to obtain or maintain control of said property, cause bodily injury, to LAURIE RUSSELL, hereinafter called complainant, by STRIKING COMPLAINANT'S HEAD WITH DEFENDANT'S HAND AND FIST[.]

The jury charge tracked the indictment. It instructed the jury that "bodily injury" means "physical pain, illness, or any impairment of physical condition." *Id.* § 1.07(8) (West Supp. 2014).

DISCUSSION

Appellant argues that the evidence is insufficient to show he committed the offense because Russell was unable to identify him, no one at the scene identified him, and the surveillance video was not clear enough to make an identification of the robber. He argues that the only link between him and the robbery was his cell phone, and he testified that he lent the phone to Greagor on the day of the offense.

We conclude that the evidence and reasonable inferences from the evidence were sufficient to allow the jury to conclude beyond a reasonable doubt that appellant committed the robbery. The detective testified that the person on the video surveillance matched the general description Russell gave of her attacker. And although Russell was unable to positively identify appellant as the attacker from the photo line-up, she was unable to exclude him as the robber, as she did with the other five photos. Other evidence showed that appellant lied about his cell phone being lost, and when he was caught in the lie, he made up another story about lending the phone to Greagor and lying about it to cover for him. Appellant also testified that service to his cell phone had been disconnected two months before the robbery, but when asked how Russell was able to make calls on it the night of the robbery, he said, "That's a total lie" and it would have been "impossible" for her to do so. Additionally, appellant's fingerprint was found on a CD inside the stolen vehicle, and other prints found in the car could not be excluded as belonging to him. And appellant's girlfriend and Greagor testified that appellant confessed to the robbery to them. Appellant argues that his girlfriend and Greagor were not credible witnesses, but credibility determinations are solely the province of the jury, and this Court must "'defer to the jury's credibility and weight determinations[.]'" *Thornton v. State*, 425 S.W.3d 289, 303 (Tex. Crim. App. 2014) (quoting *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010)). The jury also heard appellant's recorded phone call from jail to his girlfriend about getting rid of the

–7–

car before the detective arrived to interview her and telling the detective that he was with her the night of the robbery. And prior to trial, appellant wrote his girlfriend and Greagor letters telling them to "plead the 5th" or, if they did testify, how to explain their statements to the detective that appellant confessed to the robbery. He told his girlfriend it would be best if she did not show up for trial. The jury in this case chose to believe appellant's girlfriend and Greagor.

Appellant also argues that the evidence is insufficient to prove that Russell either suffered bodily injury or was threatened or placed in fear of imminent bodily injury or death. He points to Russell's testimony that it did not hurt her when appellant hit her and the officer's testimony that Russell did not have visible injuries. But Russell also testified that she sustained scrapes on her body and that it was painful when she fell to the parking lot as she struggled with appellant over the purse. Russell's physical pain and scrapes as a result of resisting appellant's attempt to rob her are sufficient to show "bodily injury" for purposes of a robbery conviction. TEX. PENAL CODE ANN. § 1.07(8); *Lane v. State*, 763 S.W.2d 785, 786–87 (Tex. Crim. App. 1989); *Arzaga v. State*, 86 S.W.3d 767, 778 (Tex. App.—El Paso 2002, no pet.).

We conclude that the evidence is sufficient to support the conviction. We resolve appellant's two issues against him and affirm the trial court's judgment.

/Elizabeth Lang-Miers/
ELIZABETH LANG-MIERS
JUSTICE

Do Not Publish
TEX. R. APP. P. 47

130880F.U05

–8–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

TRAVARUS ANTWAUN SHEAD,
Appellant

No. 05-13-00880-CR        V.

THE STATE OF TEXAS, Appellee

On Appeal from the 363rd Judicial District
Court, Dallas County, Texas
Trial Court Cause No. F12-55887-W.
Opinion delivered by Justice Lang-Miers,
Justices O'Neill and Brown participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.


Judgment entered this 23rd day of October, 2013.