# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-10478

United States Court of Appeals
Fifth Circuit

**FILED**
April 10, 2019

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

      Plaintiff - Appellee

v.

LATROY LEON BURRIS,

      Defendant - Appellant

Appeal from the United States District Court
for the Northern District of Texas

Before WIENER, GRAVES, and HO, Circuit Judges.

WIENER, Circuit Judge:

Defendant-Appellant Latroy Leon Burris pleaded guilty to being a felon in possession of a firearm and was sentenced under the Armed Career Criminal Act (ACCA), which provides for an increased sentence if the defendant has been convicted of three prior violent felonies. Burris contends that he was not eligible for the increase because his prior Texas conviction for robbery was not a violent felony.

By a divided vote, we previously held that Texas robbery does not have as an element the "use, attempted use, or threatened use of physical force."[1]

---

[1] *United States v. Burris*, 896 F.3d 320 (5th Cir. 2018), *opinion withdrawn*, 908 F.3d 152 (5th Cir. 2018) (per curiam).

No. 17-10478

The government moved for rehearing en banc, and we withdrew our opinion pending the en banc court's decision in *United States v. Reyes-Contreras*.[2] After the en banc court decided *Reyes-Contreras*, the Supreme Court decided *Stokeling v. United States*, which held that Florida robbery qualified as a crime of violence under the ACCA.[3] The parties filed supplemental briefs addressing *Reyes-Contreras* and *Stokeling*.

Those cases apply to Burris's sentence and govern the outcome of this case. We hold that robbery under Texas Penal Code § 29.02(a) requires the "use, attempted use, or threatened use of physical force" and affirm Burris's increased sentence under the ACCA.

## I. FACTS AND PROCEEDINGS

In July 2016, Burris pleaded guilty to (1) being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), and (2) possession with intent to distribute a controlled substance, under 21 U.S.C. § 841(a)(1) & (b)(1)(C).[4] The presentence investigation report (PSR) determined that Burris was an armed career criminal under 18 U.S.C. § 924(e), *viz.*, the ACCA. A defendant is an armed career criminal if he (1) is convicted of violating § 922(g), as Burris was by virtue of his guilty plea, and (2) has three prior convictions for violent felonies or serious drug offenses.[5] If a defendant meets these criteria, he is subject to a minimum sentence of fifteen years imprisonment.[6]

The PSR states that Burris had three prior convictions qualifying him for the ACCA: (1) a 1993 Texas conviction for robbery, (2) a 1993 Texas conviction for aggravated robbery, and (3) a 2012 Texas conviction for

---

[2] 910 F.3d 169 (5th Cir. 2018) (en banc).

[3] *Stokeling v. United States*, 139 S. Ct. 544 (2019).

[4] The facts of Burris's instant offenses are not relevant to the issue on appeal, which concerns only his prior Texas state court convictions.

[5] 18 U.S.C. § 924(e)(1).

[6] *Id.*

manufacturing/delivering a controlled substance. When he pleaded guilty, Burris disputed that he qualified for the enhanced penalties of the ACCA. After the probation office issued the PSR, Burris objected, insisting that his convictions for robbery and aggravated robbery do not qualify for the ACCA.[7] The district court adopted the findings of the PSR, concluding that Burris's prior convictions for robbery and aggravated robbery qualified him for the ACCA's enhancement. The court then sentenced him to 188 months in custody, a sentence at the low end of the applicable guidelines range.

Burris timely appealed, challenging the district court's ruling that his Texas convictions for robbery and aggravated robbery were "violent felonies." After Burris filed his opening brief, another panel of this court held that the version of aggravated robbery for which Burris was convicted is a violent felony under the ACCA.[8] Burris conceded that his aggravated robbery conviction qualified as a violent felony,[9] so this appeal concerns only whether Burris's conviction for simple robbery also qualifies as a violent felony.

The panel majority previously held that Burris's conviction for simple robbery was not a violent felony under the ACCA.[10] The government moved for rehearing en banc, and we withdrew our opinion pending the en banc court's decision in *Reyes-Contreras*.[11] After that, the Supreme Court decided *Stokeling v. United States*, which considered a similar issue to the one presented here. The parties filed supplemental briefing addressing those cases.

---

[7] Burris does not appear to dispute that the 2012 conviction for manufacturing/delivering a controlled substance is a serious drug offense under the ACCA.

[8] *United States v. Lerma*, 877 F.3d 628, 631, 635 (5th Cir. 2017) (explaining that aggravated robbery is divisible and the defendant's aggravated robberies involved robbery-by-threat and using and exhibiting a deadly weapon). Burris was convicted of the same type of aggravated robbery.

[9] He does, however, preserve this argument for further review.

[10] *Burris*, 896 F.3d 320.

[11] *Burris*, 908 F.3d 152.

No. 17-10478

## II. STANDARD OF REVIEW

The government acknowledges that Burris preserved his objection in the district court. We therefore review de novo the district court's conclusion that his simple robbery conviction was a violent felony under the ACCA.[12]

## III. ANALYSIS

### A. The Relevant Statutes

The ACCA defines a "violent felony," in relevant part, as:

[A]ny crime punishable by imprisonment for a term exceeding one year . . . that—
> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
> (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another[.][13]

Before the Supreme Court's decision in *Samuel Johnson v. United States*,[14] Texas robbery was considered a violent felony under the second part of clause (ii), known as the "residual clause," because it "involve[d] conduct that presents a serious potential risk of physical injury to another."[15] In *Samuel Johnson*, however, the Court struck down the residual clause as unconstitutionally vague.[16] Consequently, robbery is a violent felony under the ACCA if it has as an element the use, attempted use, or threatened use of "physical force."

### B. Divisibility

Texas robbery is defined in § 29.02(a) of the Texas Penal Code as follows:

A person commits an offense if, in the course of committing theft . . . and with intent to obtain or maintain control of the property, he:

---

[12] *United States v. Constante*, 544 F.3d 584, 585 (5th Cir. 2008).

[13] 18 U.S.C. § 924(e)(2)(B).

[14] 135 S. Ct. 2551 (2015).

[15] *United States v. Davis*, 487 F.3d 282, 285 (5th Cir. 2007).

[16] *Samuel Johnson*, 135 S. Ct. at 2557.

No. 17-10478

(1) intentionally, knowingly, or recklessly causes bodily injury to another; or
(2) intentionally or knowingly threatens or places another in fear of imminent bodily injury or death.[17]

We refer to the alternatives delineated by subparts (1) and (2) as "robbery-by-injury" and "robbery-by-threat." This court has never addressed whether § 29.02(a) is divisible or indivisible[18]—that is, whether robbery-by-injury and robbery-by-threat are (a) different crimes or (b) a single crime that can be committed by two different means.[19]

If § 29.02(a) is indivisible, we "focus solely on whether the elements of the crime of conviction" include the use of force.[20] This focus on the elements of the offense of conviction is known as the "categorical approach."[21] Under that approach, if the least culpable conduct covered by either robbery-by-injury or robbery-by-threat requires the use, attempted use, or threatened use of physical force, Texas robbery is a violent felony.[22]

To determine what a state statute covers, "federal courts look to, and are constrained by, state courts' interpretations of state law."[23] "[T]he focus on the minimum contact criminalized by the state statute is not an invitation to apply 'legal imagination' to the state offense; there must be a 'realistic probability, not a theoretical possibility, that the state would apply its statute to conduct

---

[17] TEX. PENAL CODE ANN. § 29.02(a).

[18] *Cf. United States v. Garza*, No. 2:04-CR-269, 2017 WL 318861, at *3 (S.D. Tex. Jan. 23, 2017) (implicitly characterizing robbery as a divisible statute by using the "modified categorical approach"); *United States v. Roman*, No. CR H-92-160, 2016 WL 7388388, at *3 (S.D. Tex. Dec. 20, 2016) (characterizing the robbery statute as divisible); *United States v. Fennell*, No. 3:15-CR-443-L (01), 2016 WL 4491728, at *5 (N.D. Tex. Aug. 25, 2016), *reconsideration denied*, No. 3:15-CR-443-L (01), 2016 WL 4702557 (N.D. Tex. Sept. 8, 2016), *and aff'd*, 695 F. App'x 780 (5th Cir. 2017) (appearing to avoid the issue by holding that the robbery statute was not a violent felony "even applying the categorical approach").

[19] *See Lerma*, 877 F.3d at 631.

[20] *Id.* (citing *Mathis v. United States*, 136 S. Ct. 2243, 2248 (2016)).

[21] *Id.*

[22] *See Stokeling*, 139 S. Ct. at 556 (Sotomayor, J., dissenting).

[23] *Id.*

that falls outside [the use-of-force clause.]'"[24] "Without supporting state case law, interpreting a state statute's text alone is simply not enough to establish the necessary 'realistic probability.'"[25]

On the other hand, if § 29.02(a) is divisible, we use the "'modified categorical approach,' and look to a 'limited class of documents,' such as the indictment, jury instructions, and plea agreements and colloquies to determine the crime of conviction."[26] "Those sources may be used not to locate facts supporting a [crime-of-violence] enhancement, but only 'as a tool to identify the elements of the crime of conviction.'"[27] Under that approach, we first determine the specific subsection under which Burris was convicted and then consider whether that offense "has as an element the use . . . of . . . force."[28]

Burris's conviction documents do not specify whether he was convicted of robbery-by-injury or robbery-by-threat. His indictment states that he caused injury, but it charges him with *aggravated* robbery. We cannot look to the indictment to narrow the subsection of conviction if it indicts Burris for a crime other than the one to which he pleaded guilty.[29]

*Reyes-Contreras* confirmed, however, that we may "make reasonable use of the indictment, together with the judgment, to identify the crime of conviction."[30] The judgment and indictment state that Burris caused "serious bodily injury." Based on those documents, it appears that Burris pleaded guilty

---

[24] *Reyes-Contreras*, 910 F.3d at 184 & n.35 (quoting *Moncrieffe v. Holder*, 569 U.S. 184, 191 (2013)).

[25] *Id.* at 184–85 (quoting *United States v. Castillo-Rivera*, 853 F.3d 218, 223 (5th Cir. 2017) (en banc)).

[26] *Id.* at 175 (quoting *Mathis*, 136 S. Ct. at 2249).

[27] *Id.* (quoting *Mathis*, 136 S. Ct. at 2253).

[28] *Id.* (quoting U.S.S.G. § 2L1.2 cmt. 1(B)(iii)).

[29] *Id.* (noting the "general rule that we cannot use an indictment to narrow the statute of conviction if the indictment is for a crime different from the crime stated in the judgment of conviction").

[30] *Id.* at 179.

No. 17-10478

to robbery-by-injury under § 29.02(a)(1) rather than robbery-by-threat under 29.02(a)(2).

We need not decide whether § 29.02(a) is divisible here, however, because our conclusion under either approach would be the same. As we explain in greater detail below, we hold that § 29.02(a)(1), robbery-by-injury, categorically requires the use of physical force. Section 29.02(a)(2), robbery-by-threat, requires "threaten[ing] or plac[ing] another in fear of" imminent bodily injury or death. Causing bodily injury requires the use of physical force, so threatening or placing another in fear of imminent bodily injury likewise requires the "attempted use, or threatened use of physical force."[31]

## C. Robbery-by-Injury

We first address robbery-by-injury. Section 29.02(a)(1) requires that a defendant "cause[] bodily injury." Texas defines "bodily injury" as "physical pain, illness, or any impairment of physical condition."[32] We must determine whether "caus[ing] bodily injury" under Texas law requires the use of physical force under federal law. This involves two issues: (1) the relationship between causing bodily injury and the use of physical force and (2) the degree of force necessary to qualify as a violent felony under the ACCA's elements clause. The en banc court resolved the first issue in *Reyes-Contreras*, and the Supreme Court resolved the second issue in *Stokeling*.

### 1. Causing Bodily Injury Versus Using Force

#### a. *Prior Precedent*

In *United States v. Vargas-Duran*, the en banc court considered whether the Texas crime of "intoxication assault," which requires the defendant to have "cause[d] serious bodily injury to another," was a crime of violence under United States Sentencing Guideline ("U.S.S.G.") § 2L1.2, which "has as an

---

[31] 18 U.S.C. § 924(e)(2)(B)(i).
[32] TEX. PENAL CODE ANN. § 1.07(a)(8).

element the use, attempted use, or threatened use of physical force against the person of another."[33] The en banc court held that it did not, for two reasons. First, the court explained, the Texas statute does not require that the defendant have the state of mind needed to "use" force: "[T]he fact that the statute requires that serious bodily injury result . . . does not mean that the statute requires that the defendant have used the force that caused the injury."[34] Second, the court added that "[t]here is also a difference between a defendant's causation of an injury and the defendant's use of force."[35]

We reiterated this difference in *United States v. Villegas-Hernandez*, when we considered whether the Texas crime of assault—requiring that one "intentionally, knowingly, or recklessly cause[] bodily injury" or threaten to do so—was an "aggravated felony" under U.S.S.G. § 2L1.2(b)(1)(C).[36] Aggravated felonies also must have an element of "use, attempted use, or threatened use of physical force."[37] We held that Texas's assault offense did not have use or threatened use of physical force as an element.[38] The panel approvingly cited *Vargas-Duran*'s explanation that "[t]here is . . . a difference between a defendant's causation of an injury and the defendant's use of force."[39] The panel listed examples of acts that could cause bodily injury without physical force: "making available to the victim a poisoned drink while reassuring him

---

[33] 356 F.3d 598, 600 (5th Cir. 2004) (en banc) (citation omitted). Although this Guideline is not part of the ACCA, we have explained that "[b]ecause of the similarities between U.S.S.G. §§ 2L1.2(b)(1)(A), 4B1.2(a), 4B1.4(a), and 18 U.S.C. § 924(e), we treat cases dealing with [the elements clauses of] these provisions interchangeably." *United States v. Moore*, 635 F.3d 774, 776 (5th Cir. 2011) (citation omitted).

[34] *Vargas-Duran*, 356 F.3d at 606.

[35] *Id.*

[36] 468 F.3d 874, 877–78 (5th Cir. 2006).

[37] *Id.* at 878. This "aggravated felony" definition incorporates a statutory provision using the term "crime of violence," which is different from the "crime of violence" provision in *Vargas-Duran*. *See id.*; *Vargas-Duran*, 356 F.3d at 605.

[38] *Villegas-Hernandez*, 468 F.3d at 882.

[39] *Id.* at 880 (quoting *Vargas-Duran*, 356 F.3d at 606) (omission in original).

the drink is safe, or telling the victim he can safely back his car out while knowing an approaching car driven by an independently acting third party will hit the victim."[40]

### b. *The Supreme Court and the En Banc Court Weigh In*

Under *Vargas-Duran*, a person could "cause bodily injury" per Texas law without using "physical force" per federal law. But subsequent Supreme Court precedent and the en banc court's overruling of *Vargas-Duran* in *Reyes-Contreras* foreclose that conclusion.

In *Curtis Johnson v. United States*, the Supreme Court interpreted the phrase "physical force" within the ACCA. The Court noted that the common-law definition of "force" could be "satisfied by even the slightest offensive touching."[41] But the Court held that the common-law definition of force did *not* apply to the ACCA; in the ACCA context, "the phrase 'physical force' means *violent* force—that is, force capable of causing physical pain or injury to another person."[42]

In *United States v. Castleman*, the Supreme Court considered the term "physical force" in the context of 18 U.S.C. § 922(g)(9), which prohibits the possession of firearms by anyone convicted of a "misdemeanor crime of domestic violence" (MCDV). A MCDV is defined using identical language to the ACCA: It "has, as an element, the use or attempted use of physical force."[43] But the Court distinguished "physical force" in the MCDV context from "physical force" in the ACCA. The Court held that in the context of a MCDV, "physical force" is defined as "the common-law meaning of 'force,'" which can be satisfied by mere offensive touching.[44] In making this distinction, the Court relied on

---

[40] *Id.* at 879.

[41] *Curtis Johnson v. United States*, 559 U.S. 133, 139 (2010) (emphasis in original).

[42] *Id.* at 140.

[43] 18 U.S.C. § 921(a)(33)(A)(ii).

[44] *United States v. Castleman*, 572 U.S. 157, 168 (2014).

the differences between the two contexts in which the term "physical force" arises: "[W]hereas the word 'violent' or 'violence' standing alone 'connotes a substantial degree of force,' that is not true of 'domestic violence.' 'Domestic violence' is not merely a type of 'violence'; it is a term of art encompassing acts that one might not characterize as 'violent' in a nondomestic context."[45]

Applying this common-law definition of "physical force," the Court held that the defendant's conviction for "caus[ing] bodily injury" to the mother of his child categorically qualified as a MCDV.[46] In doing so, the Court explained that "the knowing or intentional causation of bodily injury necessarily involves the use of physical force" in the MCDV context.[47] The Court added that "the common-law concept of 'force' encompasses even its indirect application," such as poisoning a victim.[48] The Court expressly declined to reach the question "[w]hether or not the causation of bodily injury necessarily entails violent force."[49] Neither did the Court decide the question whether minor injuries, such as a "cut, abrasion, [or] bruise . . . . necessitate violent force, under [*Curtis*] *Johnson*'s definition of that phrase."[50]

The Court next decided *Voisine v. United States*, which concerned the meaning of "use" rather than "physical force." Like *Castleman*, *Voisine* arose in the context of an MCDV.[51] Specifically, the Court considered whether a

---

[45] *Id.* at 164–65 (quoting *Curtis Johnson*, 559 U.S. at 140).

[46] *Id.* at 169, 167–71.

[47] *Id.* at 169.

[48] *Id.* at 170.

[49] *Id.* at 167. The Court added:

The Courts of Appeals have generally held that mere offensive touching cannot constitute the "physical force" necessary to a "crime of violence," just as we held in [*Curtis*] *Johnson* that it could not constitute the "physical force" necessary to a "violent felony." Nothing in today's opinion casts doubt on these holdings, because—as we explain—"domestic violence" encompasses a range of force broader than that which constitutes "violence" *simpliciter*.

*Id.* at 164 n.4 (citations omitted).

[50] *Id.* at 170.

[51] *Voisine v. United States*, 136 S. Ct. 2272, 2276–77 (2016).

person could recklessly "use" physical force—in the context of an MCDV—or if such "use" required knowledge or intent.[52] The Court held that there was no requirement of intent or knowledge: A person can "use" force while acting recklessly.[53] The Court added that use of force does require a "volitional" action; by contrast, involuntary or accidental movements are not uses of force in the context of a MCDV.[54]

In *Reyes-Contreras*, the en banc court resolved five questions that arose after *Castleman* and *Voisine*: (1) whether *Castleman*'s holding was limited to MCDVs, as this court had previously held,[55] (2) whether this court's previous distinction between "direct" and "indirect" force[56] was compatible with *Castleman*, (3) whether this court's previous requirement of "bodily contact" to qualify as a crime-of-violence[57] survived *Castleman* (4) whether this court's precedent holding that "the 'use' of force required that [a] defendant *intentionally* avail himself of that force"[58] survived *Voisine*, and (5) whether this court's previous precedent that imposed a distinction between "causing injury" and the "use of force"[59] survived *Castleman* and *Voisine*.

The en banc court answered "no" to all of these. It held that "*Castleman* is not limited to cases of domestic violence" and that "for purposes of identifying a conviction as a [crime-of-violence], there is no valid distinction between direct and indirect force."[60] The court also overruled the "requirement of bodily

---

[52] *Id.*

[53] *Id.* at 2278–80.

[54] *Id.* at 2278–79.

[55] *See United States v. Rico–Mejia*, 859 F.3d 318, 321–23 (5th Cir. 2017) ("By its express terms, *Castleman*'s analysis is not applicable to the physical force requirement for a crime of violence[.]").

[56] *See id.*

[57] *See United States v. Calderon-Pena*, 383 F.3d 254, 260–61 (5th Cir. 2004) (en banc).

[58] *See Vargas-Duran*, 356 F.3d at 599 (emphasis added).

[59] *See id.* at 606 ("There is also a difference between a defendant's causation of an injury and the defendant's use of force.").

[60] *Reyes-Contreras*, 910 F.3d at 182.

contact" for a crime-of-violence.[61] Importantly for our purposes today, the en banc court held that "the 'use of force' does not require intent because it can include knowing *or reckless* conduct"[62] and that "*Castleman* and *Voisine* d[id] away with *Vargas-Duran*'s unnatural separation of causing injury from the use of force."[63]

In his supplemental brief to this panel, Burris contends that *Reyes-Contreras* did not actually hold that reckless causation of injury was sufficient to satisfy the elements clause. Burris maintains that *Reyes-Contreras*'s overruling of *Vargas-Duran* is dicta. *Vargas-Duran* held that that the "use" of force requires an intentional action; *Reyes-Contreras* overruled that holding, explaining "the 'use of force' does not require intent because it can include knowing or reckless conduct."[64] According to Burris, the Missouri manslaughter statute at issue in *Reyes-Contreras* criminalized only *knowing* and *intentional* causation of death, so the *Reyes-Contreras* court's conclusion that *reckless* conduct constitutes the "use" of force did not affect the statute at issue in the case.

We disagree with Burris. To the extent the en banc court's conclusion in *Reyes-Contreras* did not address an issue central to that case, the court cabined its reasoning by explaining that the Supreme Court in *Voisine* had already "abrogated the reasoning in *Vargas-Duran*" on that issue. Notably, although *Voisine* was an MCDV case and not an ACCA elements-clause case, Burris does not challenge *Reyes-Contreras*'s application of *Voisine*'s reasoning to the ACCA's similarly worded violent-felony provision,[65] or this court's earlier

---

[61] *Id.* at 183.

[62] *Id.* (emphasis added).

[63] *Id.*

[64] *Id.*

[65] *See id.* at 183–85; *see also United States v. Haight*, 892 F.3d 1271, 1280–81 (D.C. Cir. 2018) ("The statutory provision at issue in *Voisine* contains language nearly identical to ACCA's violent felony provision: Both penalize defendants convicted of crimes that have 'as

No. 17-10478

precedent applying *Voisine* outside the MCDV context.[66] So, even assuming *Reyes-Contreras*'s "disavow[al]" of *Vargas-Duran* was dicta, *Voisine*, a subsequent Supreme Court decision, binds this court and confirms that the use of force under the ACCA includes reckless conduct.[67]

The combination of (1) *Castleman*'s holding that "the knowing or intentional causation of bodily injury necessarily involves the use of physical force,"[68] (2) *Reyes-Contreras*'s holding that *Castleman* is not limited to the MCDV context,[69] (3) *Voisine*'s holding that reckless conduct constitutes the use of physical force,[70] and (4) *Reyes-Contreras*'s holding that *Castleman* and *Voisine* eliminated the "unnatural separation of causing injury from the use of force"[71] governs the outcome here. Section 29.02(a)(1) prohibits the reckless causation of bodily injury. *Castleman*, *Voisine*, and *Reyes-Contreras* confirm that reckless conduct constitutes the "use" of physical force under the ACCA, and that the distinction between causing an injury and the use of force is no longer valid. Causing bodily injury under § 29.02(a)(1) necessarily requires the use of physical force.

### c. *Retroactivity*

Faced with this change in precedent, Burris contends that *Voisine* and *Reyes-Contreras* should not apply retroactively. He insists that those decisions

---

an element' the 'use' of 'physical force.' 18 U.S.C. §§ 921(a)(33)(A)(ii), 924(e)(2)(B)(i). So *Voisine*'s reasoning applies to ACCA's violent felony provision.").

[66] *E.g.*, *United States v. Mendez-Henriquez*, 847 F.3d 214, 220–22 (5th Cir. 2017), *cert. denied*, 137 S. Ct. 2177 (2017) (applying *Voisine*'s holding in the context of a "crime of violence" under the sentencing guidelines).

[67] *See Voisine*, 136 S. Ct. at 2279 ("But the word 'use' does not demand that the person applying force have the purpose or practical certainty that it will cause harm, as compared with the understanding that it is substantially likely to do so. Or, otherwise said, that word is indifferent as to whether the actor has the mental state of intention, knowledge, or recklessness with respect to the harmful consequences of his volitional conduct.").

[68] *Castleman*, 572 U.S. at 169.

[69] *Reyes-Contreras*, 910 F.3d at 180–82

[70] *Voisine*, 136 S. Ct. at 2279.

[71] *Reyes-Contreras*, 910 F.3d at 183.

amount to a substantial change in this court's precedent and a "significant departure" from the prior legal regime that relaxed the government's burden. We hold that retroactive application of those decisions to Burris's sentence does not violate due process.

The *Ex Post Facto* Clause does not apply to the judiciary.[72] "Strict application of *ex post facto* principles in that context would unduly impair the incremental and reasoned development of precedent that is the foundation of the common law system. The common law . . . presupposes a measure of evolution that is incompatible with stringent application of *ex post facto* principles."[73] In *Bouie v. City of Columbia*, for example, the Court held that a South Carolina Supreme Court's interpretation of a statute could not apply retroactively because the construction was (1) "clearly at variance with the statutory language"; (2) had "not the slightest support in prior South Carolina decisions"; (3) was "inconsistent with the law of other States"; (4) was anticipated by "neither the South Carolina Legislature nor the South Carolina police"; and (5) applied to conduct that could not "be deemed improper or immoral."[74] Under those circumstances, the Court held that a retroactive application of a judicial construction of a criminal statute violates the Due Process Clause if that decision is "unexpected and indefensible by reference to the law which had been expressed prior to the conduct at issue."[75]

This court recently held in *United States v. Gomez Gomez* that even though *Reyes-Contreras* significantly changed this court's ACCA jurisprudence, retroactive application of that decision does not violate due

---

[72] *Rogers v. Tennessee*, 532 U.S. 451, 460 (2001) ("The *Ex Post Facto Clause*, by its own terms, does not apply to courts.").

[73] *Id.*

[74] *Bouie v. City of Columbia*, 378 U.S. 347, 356, 361–62 (1964).

[75] *Id.* at 354 (quoting *Smith v. Cahoon*, 283 U.S. 553, 61 (1931)).

process.[76] We explained that *Reyes-Contreras* "merely reconciled our circuit precedents with the Supreme Court's decision in *Castleman*" and "aligned our circuit with the precedents of other circuits."[77] "In short, *Reyes-Contreras* was neither unexpected nor indefensible."[78]

The same is true of *Voisine*. That case resolved a circuit split over whether a misdemeanor conviction for reckless assault required the use of "physical force" in the MCDV context.[79] *Voisine*'s holding that reckless conduct qualifies as the "use" of force focused on § 922(g)(9)'s text, including (1) the definition of a "misdemeanor crime of violence" that "contain[ed] no exclusion for convictions based on reckless behavior"[80] and (2) the "ordinary meaning" of the word "use," as the Court had interpreted that term in *Castleman*.[81]

*Voisine* is consistent with the ACCA's statutory language and lacks the problems identified in *Bouie*. We agree with the other circuits that have applied *Voisine* retroactively[82] and note that the *Voisine* Court itself applied its holding to the petitioner-defendants there.[83] We conclude that *Voisine* was neither "unexpected" nor "indefensible" and may apply retroactively.[84]

### 2. Degree of Force

Although *Reyes-Contreras* resolved several ACCA issues, it did not address the *degree* of force necessary to qualify as a violent felony under the

---

[76] *United States v. Gomez Gomez*, 917 F.3d 332, 334 (5th Cir. 2019).

[77] *Id.*

[78] *Id.*

[79] *Voisine*, 136 S. Ct. at 2277–78.

[80] *Id.* at 2280.

[81] *Id.* at 2279 (citing *Castleman*, 572 U.S. at 170–71).

[82] *See Haight*, 892 F.3d at 1281 (applying *Voisine* to an ACCA predicate offense committed before *Voisine* was decided); *United States v. Pam*, 867 F.3d 1191, 1207–08 (10th Cir. 2017) (applying *Voisine* to an ACCA predicate offense committed before *Voisine* was decided).

[83] *See Voisine*, 136 S. Ct. at 2280 ("The relevant text thus supports prohibiting petitioners, and others with similar criminal records, from possessing firearms.").

[84] Our recent description of *Voisine* as "clarify[ing] long-debated interpretation[s]" of sentencing-enhancement issues bolsters this conclusion. *Mendez-Henriquez*, 847 F.3d at 218.

ACCA's elements clause.[85] Burris contends that causing a minor injury, such as a bruise, meets the Texas definition of causing "bodily injury," but does not require physical force under federal law. The Supreme Court's recent decision in *Stokeling*—which held that "'physical force,' or 'force capable of causing physical pain or injury,' includes the amount of force necessary to overcome a victim's resistance"[86]—forecloses Burris's contention. Force necessary to overcome a victim's resistance entails *less* force than is necessary to cause bodily injury under Texas law.

### a. *"Physical Force" Under the ACCA*

*Curtis Johnson* defined "physical force" under the ACCA as "*violent* force—that is, force capable of causing physical pain or injury to another person."[87] After *Curtis Johnson*, the Court left open the question whether minor injuries, such as a "cut, abrasion, [or] bruise . . . . necessitate violent force, under [*Curtis*] *Johnson*'s definition of that phrase."[88] The Supreme Court recently answered that question in *Stokeling*.

In *Stokeling*, the Court held that the ACCA's elements clause "encompasses robbery offenses that require the criminal to overcome the victim's resistance."[89] The Court explained Congress's 1986 amendment of that statute, in which Congress removed "robbery" as an enumerated predicate offense and added the elements clause. By retaining the term "force," Congress intended that the "'force' required for common-law robbery would be sufficient to justify an enhanced sentence under the new elements clause."[90] The Court explained in *Stokeling* that "it would be anomalous to read 'force' as *excluding*

---

[85] *See Reyes-Contreras*, 910 F.3d at 182 & n.28.

[86] *Stokeling*, 139 S. Ct. at 555.

[87] *Curtis Johnson*, 559 U.S. at 140.

[88] *Castleman*, 572 U.S. at 170.

[89] *Stokeling*, 139 S. Ct. at 550.

[90] *Id.* at 551.

the quintessential ACCA-predicate crime of robbery, despite the amendment's retention of the term 'force' and its stated intent to expand the number of qualifying offenses."[91]

The Court went on to explain that under *Curtis Johnson*'s definition of "physical force," the force used need not be "substantial" and the "altercation need not cause pain or injury or even be prolonged; it is the physical contest between the criminal and the victim that is itself 'capable of causing physical pain or injury.'"[92] Focusing on *Johnson*'s use of the word "capable" of causing physical pain or injury, *Stokeling* held that the "physical force" under the ACCA does not require "any particular degree of likelihood or probability that the force used will cause physical pain or injury; only potentiality."[93]

The petitioner in *Stokeling* contended—as Burris does here—that, under *Castleman*, the level of force must "be 'severe,' 'extreme,' or 'vehement.'" The Court expressly rejected that argument. "These adjectives cannot bear the weight Stokeling would place on them. They merely supported *Johnson*'s actual holding: that common-law battery does not require 'force capable of causing physical pain or injury.' . . . *Johnson* did not purport to establish a force threshold so high as to exclude even robbery from ACCA's scope."[94]

Instead, the Court adopted Justice Scalia's *Castleman* concurrence, in which he concluded that minor uses of force and minor forms of injury qualified as "physical force" under *Curtis Johnson*:

> Stokeling next contends that *Castleman* held that minor uses of force do not constitute "violent force," but he misreads that opinion. In *Castleman*, the Court noted that for purposes of a statute focused on domestic-violence misdemeanors, crimes involving relatively "minor uses of force" that might not "constitute 'violence' in the generic sense" could nevertheless qualify as predicate

[91] *Id.*
[92] *Id.* at 553 (quoting *Curtis Johnson*, 559 U.S. at 140).
[93] *Id.* at 554.
[94] *Id.* at 553.

offenses. The Court thus had no need to decide more generally whether, under [*Curtis*] *Johnson*, conduct that leads to relatively minor forms of injury—such as "a cut, abrasion, [or] bruise"—"necessitate[s]" the use of "violent force." Only Justice Scalia's separate opinion addressed that question, and he concluded that force as small as "hitting, slapping, shoving, grabbing, pinching, biting, and hair pulling," satisfied *Johnson*'s definition. He reasoned that "[n]one of those actions bears any real resemblance to mere offensive touching, and all of them are capable of causing physical pain or injury." This understanding of "physical force" is consistent with our holding today that force is "capable of causing physical injury" within the meaning of *Johnson* when it is sufficient to overcome a victim's resistance. Such force satisfies ACCA's elements clause.[95]

In short, under *Curtis Johnson*, physical force under the ACCA is force "capable of causing physical pain or injury."[96] That definition encompasses the force necessary to overcome a victim's resistance. The degree of force entails more force than the "slightest offensive touching,"[97] but does not require "any particular degree of likelihood or probability that the force used will cause pain or injury; only potentiality."[98] The emphasis is on "capable." Even minor uses of force—including hitting, slapping, shoving, grabbing, pinching, biting, and hair pulling—that lead to minor forms of injury, such as a cut, abrasion, or bruise, qualify as "physical force" under *Curtis Johnson*.[99]

### b. *Texas Robbery*

In his supplemental brief, Burris contends that Texas robbery requires less force than Florida robbery because Texas robbery does not require a physical struggle or confrontation between the robber and the victim. We disagree.

---

[95] *Id.* at 554 (citations omitted).
[96] *Curtis Johnson*, 559 U.S. at 140.
[97] *Id.* at 139.
[98] *Stokeling*, 139 S. Ct. at 554.
[99] *Id.*

No. 17-10478

Burris cites *Howard v. State*, in which the Court of Criminal Appeals of Texas upheld a conviction for aggravated robbery-by-threat even though there was no physical interaction between the defendant and the victim.[100] In *Howard*, the defendant entered a store wielding a rifle while the cashier was in the back office.[101] The cashier observed the defendant on a security camera, locked the office door, and dialed 911. The defendant took the cashier's wallet and left.[102] There was no evidence that the defendant was aware of the cashier. The court held that "robbery-by-placing-in-fear does not require that a defendant know that he actually places someone in fear, or know whom he actually places in fear. Rather, it requires that the defendant is aware that his conduct is reasonably certain to place someone in fear, and that someone actually is placed in fear."[103]

*Howard* is distinguishable. *Stokeling* did not consider a robbery-by-threat statute, so the Court did not have the opportunity to consider a "threat" statute. Even so, *Howard*'s explanation of robbery-by-threat comports with *Stokeling*'s definition of physical force. *Howard* held that a defendant must be "aware that his conduct is reasonably certain to place someone in fear, and that someone actually is placed in fear."[104] *Stokeling* held that force "capable of causing physical pain or injury" does not require "any particular degree of likelihood or probability that the force used will cause pain or injury; only potentiality."[105] Force that includes the "potentiality" of causing physical pain or injury encompasses conduct "reasonably certain" to place someone in fear of bodily injury. The defendant in *Howard* entered a store wielding a rifle. That

---

[100] 333 S.W.3d 137, 138 (Tex. Crim. App. 2011).

[101] *Id.*

[102] *Id.*

[103] *Id.* at 140.

[104] *Id.*

[105] *Stokeling*, 139 S. Ct. at 554.

necessarily involved the "*attempted . . .* or threatened use of physical force" under the ACCA.

This court has already held that the aggravated robbery-by-threat statute considered in *Howard* satisfies *Curtis Johnson*'s definition of physical force. "There can be no question that a crime under Texas Penal Code § 29.03(a)(2), that is, threatening someone with imminent bodily injury or death, or placing someone in fear of such, while using or exhibiting a deadly weapon in the course of committing theft with intent to obtain or maintain control of the property, has as an element the threatened use of physical force against the person of another."[106]

Finally, Texas caselaw indicates that robbery-by-injury does involve a physical confrontation with the victim. The Texas Court of Criminal Appeals has held that "so long as the 'violence' is clearly perpetrated against another '*for the purpose of . . . preventing or overcoming resistance to theft,*' it does not serve the legislative intent to engage in fine distinctions as to degree or character of the physical force exerted."[107] Notably, this explanation matches *Stokeling*'s definition of physical force.

### c. *"Bodily Injury" Under Texas Law*

Burris next contends that Texas's definition of "bodily injury" is too broad to satisfy the ACCA's elements clause. That definition includes, "physical pain," "illness," or "any impairment of physical condition."[108] According to Burris, Texas robbery requires less force than the Florida robbery statute considered in *Stokeling*. We disagree.

The Court of Criminal Appeals of Texas has interpreted the definition of "bodily injury" quite expansively, noting that "[t]his definition appears to be

---

[106] *Lerma*, 877 F.3d at 636.
[107] *Lane v. State*, 763 S.W.2d 785, 787 (Tex. Crim. App. 1989) (en banc) (emphasis added).
[108] Tex. Penal Code § 1.07(a)(8).

purposefully broad and seems to encompass even relatively minor physical contacts so long as they constitute more than mere offensive touching."[109] In *Lane v. State*, the court found bodily injury when the victim's "wrist was twisted" and she sustained a "bruise on her right wrist."[110] The court also approvingly cited an earlier decision holding that "a small bruise" constituted bodily injury.[111] In both cases, the victims suffered some "physical pain."[112] It appears that pain is not a requirement, however. Any "impairment of physical condition" is bodily injury.[113]

Burris cites Texas cases affirming convictions for assaultive offenses involving the transmission of HIV[114] and a case upholding an assault conviction when the defendant caused a first responder to "'feel not right' and 'to sweat very profusely more than normal.'"[115] Although these cases use the statutory term "bodily injury," they are aggravated-assault and arson cases. They therefore are not helpful in determining whether there is a "realistic possibility" that Texas would apply its *robbery* statute to force that is not capable of causing physical pain or injury under the ACCA.

The closest case Burris cites is *Martin v. State*, in which the state court upheld a robbery conviction when the defendant, in flight from a store, shouted

---

[109] *Lane*, 763 S.W.2d at 786.

[110] *Id.* at 787.

[111] *Id.* at 786–87 (citing *Lewis v. State*, 530 S.W.2d 117, 117–18 (Tex. Crim. App. 1975)); *see Gay v. State*, 235 S.W.3d 829, 833 (Tex. App.—Fort Worth 2007) (indicating that "pinch[ing]" or "rubb[ing]" a child's face amounted to bodily injury).

[112] *Lane*, 763 S.W.2d at 787; *Lewis*, 530 S.W.2d at 118.

[113] *See* TEX. PENAL CODE ANN. § 1.07 (a)(8) ("'Bodily injury' means physical pain, illness, or any impairment of physical condition."); *Gay*, 235 S.W.3d at 834 (Dauphinot, J., dissenting) ("[I]f the actor causes physical pain, it is not necessary that he also cause impairment of the [victim's] physical condition [to cause bodily injury]. Similarly, if the actor causes impairment of the [victim's] physical condition, he is not required to cause physical pain as well.").

[114] *Billingsley v. State*, 2015 WL 1004364, at *2 (Tex. App.—Eastland Feb. 27, 2015); *Padieu v. State*, 2010 WL 5395656, at *1 (Tex. App.—Dallas Dec. 30, 2010).

[115] *In re M.V., Jr.*, 2009 WL 3163522, at *2 (Tex. App.—Corpus Christi Oct. 1, 2009, no pet.).

"I have AIDS" at employees trying to detain her.[116] The court focused on the physical struggle between the robber and the victims:

> [The defendant] asserts that her statement, "I have AIDS," did not threaten or place [the victim] in fear of "any immediate danger" of bodily injury or death. However, on the circumstances in which the statement was made, the jury could have reasonably inferred otherwise. [The victims] both testified that [the defendant] had told them that she had AIDS as they were engaged in a protracted, physical struggle with [the defendant] to prevent her from escaping the store. According to [the victim], at one point during the struggle, they were "wrestling on the ground" with [the defendant], and the jury could have reasonably inferred from this and other evidence (including the 911 call in which [the defendant] can be heard yelling and screaming in the background) that [the defendant] was behaving in a violent manner as the men were holding onto her. This violent behavior, the jury could have further inferred, included not only [the defendant] "swinging and kicking" at the men but also, according [the victim's] statement to the dispatcher during the 911 call, attempting to bite them.[117]

The physical struggle in *Martin*, in which the defendant swung, kicked, struck, and attempted to bite the victims, satisfies *Stokeling*'s definition of physical force.[118] And threatening to transmit a deadly disease falls under the distinction between direct and indirect force that this court eliminated in *Reyes-Contreras*.

Burris has not established a "realistic probability" that Texas would apply its robbery statute to cover conduct that is not capable of causing physical pain or injury.[119] And, as we have explained, the *Stokeling* Court

---

[116] No. 03-16-198-CR, 2017 WL 5985059 (Tex. App.—Austin Dec. 1, 2017, no pet.).

[117] *Id.* at *6.

[118] *See Stokeling*, 139 S. Ct. at 554 (concluding that biting satisfies the ACCA's elements clause).

[119] *Reyes-Contreras*, 910 F.3d at 184–85.

No. 17-10478

expressly rejected Burris's contention that minor uses of force do not qualify as physical force under the ACCA.[120]

We hold that § 29.02(a)(1) requires more force than Florida robbery. Florida robbery requires the "force necessary to overcome a victim's physical resistance."[121] Texas robbery, in contrast, requires that a defendant, in the course of committing a theft, actually "cause[] bodily injury to another."[122] In *Stokeling*, the Court explained that minor uses of force satisfied this definition, including (1) seizing another's watch or purse and using enough force "to break the chain or guard by which it is attached to the person," (2) "rudely push him about, for the purpose of diverting his attention and robbing him," or (3) "pull[ing] a diamond pin out of a woman's hair when doing so tore away hair attached to the pin."[123] The Texas cases Burris cites require more force than these examples.

Therefore, causing bodily injury under Texas law requires more force than is necessary to overcome a victim's resistance, and Texas robbery-by-injury requires force "capable of causing physical pain or injury to another person."[124]

**D. Robbery-by-Threat**

Finally, we conclude that § 29.02(a)(2), robbery-by-threat, also has as an element the attempted or threatened use of physical force. That subsection criminalizes "intentionally or knowingly threaten[ing] or plac[ing] another in fear of imminent bodily injury or death."[125] We have held that § 29.02(a)(1), robbery-by-injury, requires the use of physical force. It follows that if *causing*

---

[120] *Id.*

[121] *Stokeling*, 139 S. Ct. at 553.

[122] Tex. Penal Code § 29.02(a)(1).

[123] *Stokeling*, 139 S. Ct. at 550.

[124] *Curtis Johnson*, 559 U.S. at 140.

[125] Tex. Penal Code § 29.02(a)(2).

No. 17-10478

bodily injury requires the use of physical force, *threatening* to cause imminent bodily injury similarly requires the "attempted use, or threatened use of physical force."[126]

## IV. CONCLUSION

We AFFIRM Burris's sentence.

---

[126] 18 U.S.C. § 924(e)(2)(B)(1).